A05A1735. HENSON et al. v. TUCKER et al.

(630 SE2d 64)

PHIPPS, Judge.

Lynn Henson and other heirs of Clarence Beck, along with the executors of his estate (collectively, the Hensons), filed an action to quiet title to a tract of land, asserting that Lamar Tucker and his wife were claiming an interest in it. On cross-motions for summary judgment, the trial court determined that title had vested in the Tuckers by prescription and acquiescence. The trial court therefore granted the Tuckers' motion and denied the Hensons' motion. The Hensons appeal, arguing that the court's rulings were erroneous. We agree. For reasons that follow, we vacate the trial court's grant and denial of summary judgment and remand the case for proceedings not inconsistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

law.[1] We review a trial court's grant or denial of summary judgment de novo, construing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant.[2]

In 1967, E. C. Barnes executed a warranty deed to sell an approximately 15-acre tract of land to Raymond Beck. In 1969, Raymond Beck executed a deed to transfer about ten of those acres to his father, Clarence Beck.

Meanwhile, in 1968, Barnes executed a deed to sell about 60 acres of unimproved land to Johnny and Mary Edwards. In 1973, the Edwardses hired a surveying company to survey their land and provided the company with their deed. Joseph Jarrett, one of the men who had participated in the survey, deposed that the surveying crew had some doubt about the boundary line between the Edwardses' property and Clarence Beck's property and called upon Clarence Beck. According to Jarrett, Clarence Beck showed them certain drill rods and pins, which Clarence Beck believed marked that boundary. In Clarence Beck's presence, "[the crew] marked everything." Thereafter, the surveying company prepared a plat of the Edwardses' land, showing a boundary line between the Edwardses' and Clarence Beck's properties with the notation "line of possession witnessed by Beck." Jarrett clarified at his deposition, "Line of possession is where [Clarence] Beck said the line was." Jarrett further deposed that the plat from their survey did not conform to the original warranty deed. Later that year, a corrective deed corresponding to the plat was executed from Barnes to the Edwardses.

The property was left unimproved and eventually it was sold to the Tuckers in parcels in February 1996 and February 1997. According to Lamar Tucker, the property was not in use until October 1996, when he and his wife built a driveway "all the way to where we were going to build the house." Soon thereafter, the Tuckers built on the land other structures, including a house and stable.

Clarence Beck died in 2002, devising the property conveyed to him by the 1969 deed to his grandchildren, including Lynn Henson. A survey of that property indicated that certain of the Tuckers' improvements encroached upon it. In March 2003, the Hensons filed a quiet title action under the Quiet Title Act of 1966,[3] asserting that the Tuckers were claiming ownership of about 5.9 acres of the property devised.[4] The Hensons asserted title to the tract through the

---

[1] OCGA § 9-11-56 (c).

[2] *Wilson v. Allen*, 272 Ga. App. 172, 173 (612 SE2d 39) (2005).

[3] OCGA § 23-3-60 et seq.; see *Williamson v. Fain*, 274 Ga. 413 (554 SE2d 175) (2001).

[4] The Hensons later added to the lawsuit certain banks, alleging that the Tuckers had

1967 deed from Barnes to Raymond Beck and the 1969 deed from Raymond Beck to Clarence Beck.

The Tuckers answered and moved for summary judgment. In their motion, they asserted title to the tract based on the deeds from Barnes to the Edwardses. Noting that the 1967 deed in the Hensons' chain of title predated the deeds in their chain of title, they sought a ruling that the 1967 deed was void for vagueness. Alternatively, the Tuckers argued that title to the tract had vested in them by acquiescence and prescription.

The Hensons moved for summary judgment, arguing that the 1967 deed from Barnes to Raymond Beck was a valid deed conveying the disputed acreage, and that, even if the deeds within the Tuckers' chain of title embraced any part of the disputed tract, the 1967 conveyance took precedence over them.

The trial court granted summary judgment in favor of the Tuckers on the grounds of prescription and acquiescence, "[w]ithout determining the validity or sufficiency of the legal descriptions of either deed." The Hensons appealed, and the Supreme Court of Georgia transferred their appeal to this court, determining that this action "does not invoke this Court's title to land jurisdiction."

1. The Hensons contend that the trial court erred in determining that title to the property vested in the Tuckers by prescription, arguing there was insufficient evidence of possession.

> Adverse possession is usually a mixed question of law and fact. The judge decides whether, as a matter of law, the facts alleged by the claimant are sufficient to constitute a claim of adverse possession. The jury decides whether the claimant has presented sufficient evidence to establish the elements of adverse possession.[5]

Here, the material facts are not in dispute, and having reviewed these facts, we agree with the Hensons.

"Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law."[6] One claiming prescriptive title must show possession of such character as to be the foundation of prescription as contemplated by OCGA § 44-5-161.[7] Under that Code section,[8] to

---

granted them security interests in the property at issue.

[5] *Proctor v. Heirs of Jernigan*, 273 Ga. 29 (2) (538 SE2d 36) (2000) (footnote omitted).

[6] OCGA § 44-5-160.

[7] *Olsen v. Noble*, 209 Ga. 899, 905 (1) (76 SE2d 775) (1953).

[8] The trial court cited OCGA § 44-4-7, which is applicable to processioning. We consider the correctness of the trial court's grant of summary judgment on the basis of adverse possession

establish title by prescription, "whether by twenty years or seven years under color of title, a party must show possession not originated in fraud that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right."[9] "Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another."[10]

The Tuckers cite the construction of their driveway, apparently on the disputed tract, in October 1996. But the Hensons' quiet title action, filed within seven years thereof, interrupted any running of the shorter seven-year statutory period.

The Tuckers also claim that adverse possession began in 1973, when at the Edwardses' behest, a surveying crew entered the disputed tract and marked drill rods and pins that Clarence Beck indicated represented the boundary line.[11] However, the Supreme Court of Georgia has held that entering a tract of land and surveying it is not an "open, notorious nor a continued possession."[12] The Court specifically determined, "Passing through a tract of land, or around it, and marking trees, is no such possession. It is no disseizin."[13] Accordingly, the 1973 surveying of the land and marking of drill rods and pins found thereon did not amount to an adverse possession.[14]

Furthermore, these acts do not become an adverse possession merely because they are done in the presence of the true owner and consistent with his or her indications of the property boundaries. OCGA § 44-5-161 requires, among other things, a possession showing continuity and exclusiveness. "The rule requiring continuity of possession is one of substance and not of absolute mathematical continuity. . . ."[15] Thus, there may be "slight intervals" in which the prescriber or his agent is not actually upon the land or there may be "short intervals of temporary absence" of such persons.[16] But it is necessary that, during the whole time required for the ripening of

---

pursuant to OCGA § 44-5-161 under the "right for any reason" rule. See generally *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

[9] *Cooley v. McRae*, 275 Ga. 435, 436 (569 SE2d 845) (2002), citing OCGA § 44-5-161 (a).

[10] OCGA § 44-5-165.

[11] See *Roylston v. Conway*, 251 Ga. App. 648, 653 (2) (555 SE2d 28) (2001) (possession by different holders may be tacked together when the prior possession also satisfies the other elements of adverse possession).

[12] *Dillon v. Mattox*, 21 Ga. 113, 117 (2) (1857).

[13] Id.

[14] See id.

[15] *Walker v. Steffes*, 139 Ga. 520, 521 (9) (77 SE 580) (1913); see *Jackson v. Tolliver*, 277 Ga. 58, 60 (2) (586 SE2d 321) (2003).

[16] *Walker*, supra.

prescription, there should be something to give notice that another is doing such acts or holding out such signs as to indicate the existence of a possession adverse to the true owner.[17] Moreover, "[a]dverse possession, in order to ripen into title, must be exclusive. 'Exclusive possession' means that the disseizor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit."[18]

Therefore, passing through the disputed tract of land on one occasion and marking drill rods and pins consistent with Clarence Beck's indications and in his presence did not constitute continuous or exclusive possession as contemplated by OCGA §§ 44-5-161 and 44-5-163.[19] And the Tuckers have cited nothing in the record that would evidence other acts by either the Edwardses or by subsequent successors in title save their own driveway construction in October 1996. According to Lamar Tucker, the property had remained unimproved and not in use until that time. And as we have already determined, the Hensons' quiet title action defeated any claim of adverse possession based upon the driveway construction.

The Tuckers failed to show possession so continuous and exclusive as to prevent occupation by others of the disputed tract. Therefore, the trial court erred in granting the Tuckers summary judgment based upon their claim of prescriptive title.

2. The Hensons contend that the trial court erred in ruling that title to the property had vested in the Tuckers by acquiescence under OCGA § 44-4-6. We agree.

Under OCGA § 44-4-6,[20] "acquiescence for seven years by acts or declarations of adjoining landowners shall establish a dividing line." The Tuckers assert that Clarence Beck's indications to the

---

[17] Id. at 521-522.

[18] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (a) (482 SE2d 362) (1997) (citation and punctuation omitted).

[19] See *Dillon*, supra; *Burgin v. Moye*, 212 Ga. 370, 374 (3) (93 SE2d 9) (1956) ("word 'possession' denotes the corporeal control of property, a state of actual occupancy, evidenced by things capable of being seen by the eye or of being ascertained by the use of the primary senses") (citation and punctuation omitted); *Anderson v. Barron*, 208 Ga. 785, 794 (3) (69 SE2d 874) (1952) (no adverse possession where land had no dwelling, no outhouse, no cultivation, but was an isolated, unfenced 202.5-acre tract of woodlands, although claimant paid tax, posted signs forbidding trespass, permitted pine trees to grow, occasionally cut and removed timber, kept fires off, and infrequently visited site).

[20] OCGA § 44-4-6 is contained within the "Processioning" Article of Chapter 4 of Title 44. But see *Warwick v. Ocean Pond Fishing Club*, 206 Ga. 680, 682 (1) (58 SE2d 383) (1950) (while [OCGA § 44-4-6] is applicable in processioning proceedings, it is likewise applicable in an action seeking to enjoin a trespass and to establish the dividing line); see also *Jackson*, supra at 60 (3); *Williamson*, supra; compare *Gauker v. Eubanks*, 230 Ga. 893, 898 (3) (199 SE2d 771) (1973) (determining that a case commenced by petition in quia timet filed against a particular party to determine interests in a strip of land under the Quiet Title Act of 1966 was "not a suit to 'establish a dividing line' as contemplated by [OCGA § 44-4-6]").

surveying crew in 1973 concerning the boundary of his property established a dividing line between his property and the Edwardses'.

In *Gauker v. Eubanks*,[21] a petition to quiet title to a strip of land was filed pursuant to the Quiet Title Act of 1966.[22] The Supreme Court of Georgia was called upon to consider whether a boundary line of that strip had been fixed based upon Code § 85-1602, which was later designated as OCGA § 44-4-6. The Court found the Code section inapplicable.[23] It reiterated, "[a]cquiescence will not establish a divisional line, in disregard of definite boundaries fixed by deeds, and thus operate to create title to lands not embraced, by a fair construction, within the description in the deeds."[24] The Court further stated,

> The principle that a boundary line between adjoining land-owners may be established by consent is not applicable in a case where one claiming to be an adjoining landowner has no independent title, but must rely on such consent to show title. To apply the principle in such a case would amount to a parol transfer of title to land.[25]

Because the party asserting acquiescence in that case had no independent source of title, "[h]er claim of acquiescence for a period of more than seven years [was] nothing more than an attempt to establish title in her to [the] property. But the acquiescence rule in Code § 85-1602 cannot be used to establish title."[26]

Here, the Tuckers assert that "the corrective deed from Barnes to Edwards in 1973 embraces the disputed area as it clearly identifies [the disputed area]." Even assuming that it does, the evidence shows that the pertinent boundary line set forth in the corrective deed was so placed in reliance upon Clarence Beck's indications. The corrective deed from Barnes to Edwards is not a source of title independent of indications attributed to Clarence Beck regarding the boundary line.

The Tuckers next seem to assert title to the disputed tract on a claim that a fair construction of the other deeds in their chain of title embrace some or all of the disputed tract. The sufficiency of the description of property in a deed is a question of law for the court.[27]

---

[21] Supra.

[22] Id. at 898 (3).

[23] See footnote 20, supra.

[24] *Gauker*, supra at 899 (citation and punctuation omitted).

[25] Id. at 898-899 (citation and punctuation omitted).

[26] Id. at 899 (citations omitted).

[27] *Strickland v. CMCR Investments, LLC*, 279 Ga. 112, 114 (1) (610 SE2d 71) (2005).

The trial court, however, expressly declined to make findings regarding the validity or sufficiency of the legal descriptions in the deeds in this case. Without such findings, the trial court could not have made the necessary threshold determination that the Tuckers had an independent source of title to the tract. Summary judgment on this ground was thus unauthorized.[28]

We believe the appropriate course is to allow the trial court to issue rulings regarding whether fair constructions of these deeds in the Tuckers' chain of title embraced what they claim by acquiescence.[29] "The tenet that the appellate courts do not rule on issues not ruled on by the trial courts preserves the appellate courts' jurisdiction and delineates the proper roles of the courts at the trial and appellate levels."[30] The grant of summary judgment to the Tuckers is vacated.

Furthermore, "[a] boundary line which is in dispute, uncertain[,] or unascertained, may be established either (a) by oral agreement, if the agreement is accompanied by actual possession to the line or is otherwise duly executed or (b) by acquiescence for seven years as provided in OCGA § 44-4-6."[31] The trial court based its decision on OCGA § 44-4-6, without ruling on the Tuckers' argument that a boundary line had been established by oral agreement between certain predecessors in title. Thus, this argument remains pending for consideration on remand.[32]

3. Finally, the Hensons contend that the trial court erred in denying their motion for summary judgment, citing the deeds in their chain of title dating back to the 1967 deed executed by Barnes. The Tuckers counter that the Hensons could not have obtained any interest in the disputed tract, asserting that the deeds in their chain of title are void for vagueness. The trial court did not determine the validity and sufficiency of the pertinent deeds, but instead denied the Hensons' summary judgment motion in consequence of its grant of summary judgment to the Tuckers. We have determined that the grant was based on erroneous legal theories. Because the trial court

---

[28] See *Gauker,* supra; see generally *Jackson,* supra ("[OCGA § 44-4-6] refers to 'establishing,' and not 're-establishing' the dividing line. If the line be certain and ascertained, it is established already, and the rule for establishing it by acquiescence is inapplicable. Acquiescence cannot be founded on parol negotiations fixing a boundary line, where a deed fixes a different boundary line.") (citations and punctuation omitted).

[29] See *City of Gainesville,* supra (holding that appellate courts have discretion in whether to apply right for any reason rule to address grounds raised in a summary judgment motion, upon which the trial court has not ruled).

[30] Id. at 838; see also Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (1) (reserving exclusive jurisdiction to the Supreme Court of Georgia in cases involving title to land).

[31] *Williamson,* supra at 416 (4), quoting *Cothran v. Burk,* 234 Ga. 460, 461 (216 SE2d 319) (1975).

[32] See generally *City of Gainesville,* supra.

did not reach the merits of the Hensons' motion, the denial of that motion is vacated, and the motion remains pending for consideration on remand.

*Judgment vacated and case remanded. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 24, 2006 —
RECONSIDERATION DENIED APRIL 14, 2006.

*Butler & Capo, Larry K. Butler, John J. Capo*, for appellants.
*Eugene B. Chambers, Jr.*, for appellees.