**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2018**

# In the Court of Appeals of Georgia

A17A1423. DAVIS et al. v. GANAS et al.                    DO-055

DOYLE, Presiding Judge.

South Beach Development, Inc., who owned Long Pond, a private lake in Lowndes County, Georgia, executed a deed transferring title of the lake to Charles E. Davis. Thereafter, Dana and Jerry Ganas purchased a tract of land abutting the waters of Long Pond, which tract included a boathouse and dock that extended into the lake. After Davis attempted to restrict their use of the lake, the Ganases sued Davis and South Beach, seeking damages and to permanently enjoin them from interfering with the Ganases' rights to use the waters of the lake, including the use of the boathouse and dock. The Ganases moved for partial summary judgment as to their claim for injunctive relief and as to Davis's counterclaim for trespass, and the trial court granted the motion. The defendants appeal, and for the reasons that follow, we

affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the undisputed facts in this case show that in 1962, South Beach was created for the purpose of purchasing, subdividing, and developing real estate. On June 2, 1969, South Beach conveyed to Elmon Gaskins and Reuben Yancey several tracts of land abutting Long Pond, as well as those portions of the lake bottom of Long Pond that South Beach owned, in exchange for a deed to secure debt for a portion of the purchase price in favor of South Beach, such that South Beach would reclaim ownership if Gaskins and Yancey defaulted on the note. Gaskins and Yancey

---

[1] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003), quoting *Youngblood v. Gwinnett Rockdale &c.*, 273 Ga. 715, 717 (4) (545 SE2d 875) (2001); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

created a subdivision, which was platted and recorded; the subdivision included the lot subject to this appeal ("the Property"). On June 25, 1969, after creating the subdivision, Gaskins and Yancey formulated and recorded restrictive covenants that applied to the lots, including the Property, and the subdivision. The covenants were specifically limited to a period of 20 years. One of the covenants granted property owners the right to build a dock that could extend no more than 30 feet into the waters of Long Pond. On July 7, 1969, Gaskins and Yancey sold the Property to Talley M. Wisenbaker; the deed stated: "It is the intention of this instrument that [the purchaser], his heirs[,] and assigns shall have free access to the waters of Long Pond, regardless of the recession thereof as against the claims of the Grantors herein." Two days later, South Beach executed a quit claim deed and released the Property from any indebtedness.

In October 1970, Gaskins and Yancey ultimately defaulted on their purchase security deed, and South Beach foreclosed on and regained title to all property in the subdivision that had not been sold, including the lake bottom and excluding the Property, which had already been sold. At some point, a subsequent purchaser of the

Property built a house, as well as a dock and boathouse that extended into Long Pond.[2]

In May 2015, South Beach executed a quit-claim deed conveying to Davis "all lands owned by South Beach . . . lying and being in [two particular lots] now or formerly covered by waters of Long Pond. . . ."[3] On October 22, 2015, the Bendises conveyed the Property, which is bounded by Long Pond, to the Ganases. At that time, the house constructed on the property had apparently been destroyed by fire, but the dock and boathouse remained. According to Jerry Ganas, he was aware before he purchased the Property that Davis claimed ownership of the bottom of Long Pond, and Jerry and Davis had discussed how much Davis would "charge" for "lake bottom property."

---

[2] The record does not include purchase documents from Wisenbaker to any future owner(s) until the 2015 sale of the Property to the Ganases. There is no evidence of the date that the dock and boathouse were constructed, although there is an affidavit of possession executed by Dorothy and Donald Bendis, who sold the Property to the Ganases, stating that the dock and boathouse were constructed prior to the Bendises' purchase of the property on June 16, 1993. Therefore, the evidence indicates that the boathouse and dock were erected some time between June 25, 1967, and June 16, 1993.

[3] As explained below, the Ganases contest the validity of the deed from South Beach to Davis, arguing that it is unenforceable because it was not sufficiently specific. The trial court did not rule on this argument.

4

On February 2, 2016, the Ganases filed suit against the defendants, seeking damages and an injunction precluding them from interfering with the Ganases' right to use and enjoy the waters of Long Pond, including the dock and boathouse. The Ganases specifically alleged that Davis had erected a barbed-wire fence along the Property, preventing them from enjoying their property rights in Long Pond.[4] Both Davis and South Beach filed answers. On June 1, 2016, Davis amended his answer to add a counterclaim for trespass, seeking equitable relief and an injunction.

On June 23, 2016, the Ganases moved for partial summary judgment, arguing that the quitclaim deed from South Beach to Davis was void; the Ganases have a permanent easement to use the waters of Long Pond, including the ability to erect and maintain a dock and boathouse; and Davis's counterclaim was untimely and should be dismissed. On July 19, 2016, Davis filed a motion seeking leave to amend his answer to assert his counterclaim for trespass.

On January 9, 2017, following a hearing, the trial court granted partial summary judgment to the Ganases. In the order, the trial court specifically declined

[4] On March 30, 2016, the trial court entered a consent order enjoining the defendants from taking any actions to impede the Ganases's rights to enjoy the waters of Long Pond and to have undisturbed access thereto, including any docks extending into the lake, until further order of the court.

to rule on their argument regarding the validity of the quitclaim deed from South Beach to Davis.[5] The court (1) concluded that based upon the language of the deeds conveying the property from South Beach to Gaskins and Yancey and all subsequent conveyances, including the deed from the Bendises to the Ganases, the grantors intended that any owner of the Property "enjoy full access to Long Pond"; (2) found that the Ganases have a "permanent irrevocable easement" in the lake, which enjoyment "extends to the dock and boathouse that is currently erected on the [Ganases's] property"; and (3) struck Davis's counterclaim as compulsory and untimely. This appeal followed.

1. *The Ganases' right to access to Long Pond.* The defendants concede that the Ganases acquired free access to the waters of Long Pond because the Property was included in a platted subdivision, which granted the owners such access, and the Ganases relied on such. Nevertheless, the defendants contend that the trial court erred by concluding as a matter of law that the right to enjoy free access to the waters

---

[5] The trial court stated that "it is not necessary to decide whether the [quitclaim] deed from . . . South Beach to . . . Davis is on its face defective because the main issue in the suit is to establish the [Ganases'] rights to the dock and boathouse as well as their access to Long Pond[,] and these questions can be answered without ruling on the first question proposed by the [Ganases]."

includes the right to construct and maintain a dock and boathouse that is anchored to the bottom of Long Pond, which the Ganases do not own. We agree.

> (a) Georgia law is clear that where a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use. An easement acquired in this manner is considered an express grant, and is an irrevocable property right. The rationale is that the grantees of the property have given consideration for its enhanced value in the increased price of their lots.[6]

Here, it is undisputed that the Property was included in Gaskins's and Yancey's platted subdivision that centered around Long Pond, which was designated on the subdivision plat, and the original property owners were expressly granted rights of access to Long Pond. Accordingly, the trial court properly concluded that the Ganases have an irrevocable easement of access to the waters of Long Pond, and we affirm that portion of the order granting partial summary judgment to the Ganases.[7]

---

[6] (Citations and punctuation omitted.) *Davis v. Foreman*, 311 Ga. App. 775, 778 (3) (717 SE2d 295) (2011), quoting *Walker v. Duncan*, 236 Ga. 331, 332 (223 SE2d 675) (1976); *Patterson v. Powell*, 257 Ga. App. 336, 337 (571 SE2d 400) (2002); and citing *Higgins v. Odom*, 246 Ga. 309 (271 SE2d 211) (1980).

[7] Because "[t]he easement was not created by the [restrictive] covenant[s], . . . it could not be nullified by the expiration of the covenant[s]." *Patterson*, 257 Ga. App. at 338.

7

There is, however, an issue of fact as to whether "free access to the waters" includes the right to construct and/or maintain a boathouse and dock. "The grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted."[8] Further, "[w]here an easement is granted without limitations on its use, the grantee is entitled to avail himself of other reasonable uses which develop over time if such uses significantly relate to the object for which the easement was granted."[9]

Here, there is

> an issue of fact regarding what is reasonably necessary for the enjoyment of the . . . access easement . . . , as well as regarding whether [a dock and boathouse] would cause unreasonable damage to [Long Pond] or unreasonable interference with [the owner of Long Pond's] enjoyment [thereof]. We therefore remand the case to the trial court for further proceedings on that issue.[10]

---

[8] *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565, 566 (2) (397 SE2d 435) (1990), citing *Brooke v. Dellinger*, 193 Ga. 66 (17 SE2d 178) (1941).

[9] *Jakobsen*, 260 Ga. at 566 (2).

[10] *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101, 111 (2) (751 SE2d 866) (2013). Although the trial court concluded that access to the lake "extends to the dock and boat-house that is currently erected on the [Ganases's] property," the court did not make any findings regarding whether such structures were reasonably necessary for the Ganases enjoyment of their easement or whether they would interfere with Long Pond owner's rights to the lake.

8

(b) The Ganases argue for the first time on appeal that the trial court properly granted summary judgment because the statutes of limitation for violation of restrictive covenants[11] and trespass[12] have expired, and therefore, the defendants are barred from pursuing any claim arising from the placement of the dock or boathouse. Because this argument was neither raised before nor ruled upon by the trial court, we do not consider it here.[13] Also, we note that the Ganases's challenge to the validity of the quitclaim deed from South Beach to Davis remains pending.[14]

(c) Finally, we note that the trial court's ruling regarding adverse possession is not clear. In the order, the trial court stated: "While evidence was not presented that establishes adverse possession, the [c]ourt is of the opinion that there is strong evidence that even if the easement did not exist[,] the prior owners adversely

---

[11] See OCGA § 9-3-29 (a) ("All actions for breach of any covenant restricting lands to certain use shall be brought within two . . . years after the right of action accrues. . . .").

[12] See OCGA § 9-3-30 (a) ("All actions for trespass upon or damage to realty shall be brought within four . . . years after the right of action accrues.").

[13] See *Cox v. Progressive Bayside Ins. Co.*, 316 Ga. App. 50, 52 (2) (728 SE2d 726) (2012) ("The Court of Appeals will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal.").

[14] See *Henson v. Tucker*, 278 Ga. App. 859, 865 (2) (630 SE2d 64) (2006).

9

possessed the lake bottom where the dock is attached." We are unable to discern whether the trial court found that adverse possession was established as a matter of law, and therefore, this opinion should not be construed as a ruling on such an argument.

2. *Davis's counterclaim*. Davis argues that the trial court erred by striking his counterclaim. We agree.

As previously stated, although Davis asserted trespass as a defense in his initial answer, he did not assert a counterclaim at that time.[15] Almost four months later, he amended his complaint to add a counterclaim for trespass. After the Ganases filed their motion for partial summary judgment, Davis filed a motion for leave to amend his answer and add the counterclaim. In the order granting partial summary judgment to the Ganases, the trial court stated:

> [Davis's] counterclaim is compulsory and should be stricken because it was untimely filed. The [c]ourt finds that [Davis's] counterclaim was filed outside of the time allowed for such pleadings[,] and [Davis] failed to state that the counterclaim was filed late because of oversight,

---

[15] Specifically, Davis stated as his third defense that "[the Ganases] have interfered with and trespassed upon Davis'[s] property rights. In fact, the plaintiffs have been prosecuted by the City of Lake Park for the offense of 'criminal trespass' upon . . . Davis'[s] property."

inadvertence[,] or excusable neglect[,] nor did [Davis] request permission of the [c]ourt before filing said [c]ounterclaim. Accordingly, [Davis's] counterclaim is hereby **STRUCK**.[16]

As the trial court concluded, the counterclaim was compulsory because it arose out of the same transaction or occurrence as the Ganases's claim and had matured at the time Davis filed his answer.[17] And because Davis failed to assert the counterclaim when he filed his initial answer, it was untimely.[18] He did, however, seek leave to amend his answer pursuant to OCGA § 9-11-13 (f), arguing that the counterclaim was permissive or, in the event the trial court found it to be compulsory, justice required the court to permit the amendment, which would not prejudice the Ganases.[19]

---

[16] (Emphasis in original).

[17] See *Tenneco Oil Co. v. Templin*, 201 Ga. App. 30, 31 (1) (410 SE2d 154) (1991) ("Essentially, a compulsory counterclaim is one which: 1) arises out of the same transaction or occurrence as the main claim; and 2) has matured at the time the answer is filed.").

[18] See OCGA § 9-11-13 (a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.").

[19] OCGA § 9-11-13 (f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

11

And although the Ganases filed a motion for summary judgment on this issue before Davis filed his motion to amend, the trial court had not yet ruled on the summary judgment motion at that time and did not do so for an additional six months. The trial court, however, apparently ruled only on the motion for summary judgment, declining to exercise its discretion and issue a ruling on the merits of the motion to amend as required by OCGA § 9-11-13 (f). Because the trial court had not yet ruled on the summary judgment motion when Davis filed the motion to amend, the court erred by failing to consider Davis's motion.[20] Accordingly, we vacate that portion of the trial court's order striking Davis's counterclaim and remand the case "for the court to exercise its discretion and issue a ruling on the merits of the motion [to amend]."[21]

*Judgment affirmed in part and vacated in part, and case remanded. Miller, P. J., and Reese, J., concur.*

---

[20] See *Richards v. Wells Fargo Bank, N.A.*, 325 Ga. App. 722, 727-728 (5) (754 SE2d 770) (2014).

[21] Id. at 728 (5) (b).