# Petty et al. v. Petty.

(Decided June 19, 1936.)

LEWIS F. BROWN and A. L. INSKEEP for appellants.

JOHN T. MURPHY and STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

Ova Petty brought this suit against Molly Petty and Athel Vastine to enjoin them from trespassing on his farm in Kenton county. On final hearing a temporary injunction theretofore granted was made permanent. The defendants appeal.

Appellee Ova Petty testified in substance as follows: He lived on the Taylor Mill and Fowler Creek pikes, and had lived in his father's and mother's home all of his life. His father died in 1887, owning 220 acres of land. The estate was divided among five. Thirty-eight acres were allotted to his mother as dower and the adjoining tract was allotted to Dr. Charles M. Petty. The land in dispute lies between the dower and the Dr. Charles Petty tract. After occupying his tract for about 20 years Dr. Petty sold it to his brother Julius, who married Molly Petty, who on her death left surviving her, Grace Vastine. He purchased the interest of the other heirs in the dower tract during the latter part of 1907, and since that time had been occupying that tract as sole owner. The fence between the dower tract and the adjoining tract had been the line since

1888, and had not been changed or modified in any way. During all that time there had been no dispute as to the line. After his brother Julius purchased the adjoining tract from the Doctor he (witness) built a fence across the tract and set posts. He and his brother Julius maintained the fence during his lifetime and there was no dispute between him and Julius as to the line. Shortly before he testified Mr. Vastine had the line surveyed and undertook to fence it at a different place. He was also cutting bushes and some sassafras trees over there. On cross-examination witness testified that the fence spoken of ran all the way across the land and was the north line. The part of the fence on his line was erected about 35 years ago. The other end of the fence was erected in 1915. There was never any question as to the location of the fence, but there was trouble at one time over the cattle getting in and eating up his corn. Dr. Charles M. Petty testified that upon the death of his father commissioners were appointed to divide up his farm. The line in dispute is a straight line from the Fowler Creek road to Taylor Mill. He owned the land about 19 years and then sold it to his brother, Julius Petty. There was never any dispute about the dividing line. When he sold it to his brother Julius the fence did not run all the way across, only next to the Taylor Mill road. Before he became a physician he studied surveying and engineering. The correct line between the two tracts was where the fence is now, and there was never any dispute as to the location of the correct line until about a year before he testified. On being recalled, Ova Petty testified that he traded one parcel of land to his brother Julius for two parcels over on the other side. Newman Armstrong had lived in Kenton county since 1880 and had known the Petty place for 35 years. He knew where the fence was at the present time, and there had been no change in the line for 35 years. According to Clifford, Mr. Ova Petty had always been in possession of the land, and he had never heard any dispute about it. However, he did hear Mr. Julius Petty say that he was going to have the land surveyed. John Shaw lived on the Taylor Mill pike and had known the Petty place ever since he could remember. He knew the line between the Ova Petty place and the Julius Petty place. On the Taylor Mill end there was a woven wire fence, and on the other

end back toward Independence there was a barbed wire fence. There had been no other indication of a line through there for a period of 24 years. He never heard of any dispute as to the line, and the line had never been changed. On one side of the fence was the Ova Petty place and on the other the Julius Petty place. Lief Faulkner lived on the Fowler Creek road and had been there for more than 15 years. There had been no change in the line since that time.

Grace E. Vastine testified that she was the daughter and sole survivor of Molly Petty, and inherited the farm at her death. At the time she testified she was 44 years of age. The fence in question was put up when she was about 12 or 13 years old, that is, that piece down as far as the hollow, but it was put up by her uncle to pasture the dower. Her uncle, Dr. Petty, came in and told her grandmother that there was a mistake in the line. Her father had several disputes over the line with Mr. Ova Petty. The farm was surveyed by Mr. Blackburn in 1915. Mr. Ova Petty helped to run the lines and he and Julius got into a dispute. That was in 1915. Terrill's survey fixed the line further up like the other two surveyors. "The line runs through there, but the fence didn't follow it." She considered the line where the deed calls for. The fence was there when she was a little girl. She did not know how long it had been there. When stopped, her husband was cutting fence posts and was going to set the fence. Athel Vastine testified that he had moved in on the place in 1908. There was always a dispute as to the line. Mr. Julius claimed the land went up the road above the fence "one hundred and twenty-nine feet above the fence." The line was run by Mr. Blackburn. Down toward the lower end ever since he had been in the family there were three barbed wires that had been there since 1908. At the time he was stopped he had chopped down some sassafras bushes. So far as he knew Mr. Ova Petty had been in possession on that side of the fence. W. R. Terrill testified that he surveyed the farm and found out that the fence was 129 feet over on the Molly Petty farm. There were 39 acres, three rods and twelve poles in the dower, but he was stopped before he could figure out the amount. He did not know whether it was short or long. However, he ascertained the correct boundary. Ed Petty, a brother of Ova Petty, tes-

tified that he ceased to live on the home place in 1901. He used to own the fence between the Ova Petty place and the Molly Petty place. There was a mistake in the original division, but he did not know whether the fence there now was on the boundary or not. In rebuttal Dr. Charles Petty denied stating to his mother at one time that there was a mistake about where the line was. He himself surveyed the land, got the bearings, ran it according to the bearings, and the line came out where the fence is today. At no time was there ever any dispute or controversy between him and his brother Julius as to the location of the line.

The main contention of appellants is that the petition is not sufficient to support the judgment for the reason that it did not describe the land owned by appellee in such a way as to enable the court to render a proper judgment. There might be merit in this contention if this were a suit to quiet title, but the purpose of the action was to enjoin trespass. While the pleadings are not as specific as they might have been the parties joined issue on the location of the dividing line between their properties, and the case was tried out on that theory. As both parties derived title from a common source, it was not necessary for either to prove title back of that source. Crawford v. Crawford, 231 Ky. 675, 22 S. W. (2d) 93. Appellee claimed title by virtue of his deeds and adverse possession. Appellants claim that the fence is over on their property and some distance from the line as originally surveyed, and that the proper location of the fence has always been in dispute. Whether the present fence is on the dividing line as originally surveyed, we need not determine. It was at its present location for more than 15 years prior to the institution of this action. During all that time appellee held and claimed the land up to the fence. The weight of the evidence is that there was never any dispute as to the proper location of the fence until a short time ago, but even if its proper location had always been in dispute, that of itself would play no part in the case. If one fences and takes possession of a neighbor's land, the only way that the neighbor can stop the running of the statute of limitations is by retaking possession or instituting suit within the statutory period (Ky. Stats. 1930, sec. 2505). Mere words will not be sufficient. As appellants were trespassing upon land to

which appellee, to say the least, had acquired title by adverse possession, it follows that the injunction was proper.

Judgment affirmed.