Patricia Tatum McALPIN, in her Individual Capacity and in her Capacity as Executrix of the Estate of Kathryn Tatum; Timothy J. McAlpin; the J.D. McAlpin Group, Inc.; Michael Ray Tatum; and Susan L. Young–Tatum, Appellants/Cross–Appellees

v.

John W. BAILEY and Elizabeth C. Bailey, Appellees/Cross–Appellants.

Nos. 2010–CA–001123–MR, 2010–CA–001206–MR.

Court of Appeals of Kentucky.

June 1, 2012.

Rehearing Denied Aug. 29, 2012.

William K. Moore, Versailles, KY, for appellants/cross-appellees.

Jeffrey A. Darling, Lexington, KY, for appellees/cross-appellants.

Before TAYLOR, Chief Judge; DIXON and LAMBERT, Judges.

## OPINION

LAMBERT, Judge:

This is an appeal and cross-appeal from a judgment holding that the appellees acquired title to a disputed strip of property under the doctrine of champerty and awarding compensatory damages to the trespassing parties for the value of the encroaching fence. After careful review, we affirm in part, reverse in part, and remand.

John and Elizabeth Bailey ("the Baileys") purchased their home located at 2009 Bamboo Drive in Lexington, Kentucky on August 11, 1994. At the time the home next door, 2013 Bamboo Drive, was occupied by Kathryn Tatum. Kathryn's children, Patti Tatum Coffey and her brother, Michael Ray Tatum, purchased the property at 2013 Bamboo Drive on April 1, 1994, from Jerry R. Weesner and Vicki I. Weesner. Although Kathryn lived in the home at 2013 Bamboo Drive from April 1, 1994, until her death in April 2008, she did not own the property until Patti and Michael conveyed it to her in June 1998.

When the Baileys moved into their home at 2009 Bamboo Drive in 1994 there was an existing privacy fence surrounding the Tatum backyard at 2013 Bamboo Drive that had been erected by the Weesners. In the fall of 1994, shortly before her husband's birthday, Elizabeth Bailey extended the fence and completely enclosed her backyard by adding to the end of the existing fence line.

In 1998, Patti and Michael conveyed all interest in the property located at 2013 Bamboo Drive to their mother, Kathryn, who continued to live in the residence. Upon Kathryn's death in April 2008 and according to her Will, the property was bequeathed solely to Patti (now Patricia Tatum McAlpin).

In March 2008, about a month before Kathryn died suddenly, the Baileys started the construction of a $35,000.00 backyard landscaping project that included thirty-two tons of boulders, a fifteen-foot waterfall, and custom electrical systems. This was completed just after Kathryn died.

In May 2008, Timothy McAlpin, Patti's husband, engaged a surveyor to complete a survey of the property. John Bailey came home for lunch one day to find Timothy and a surveyor in his backyard. Timothy informed John that it appeared that the fence was several feet onto the McAlpin property and stated that he would get back with the Baileys about a potential sale price for the property in a couple of days.

Thirteen months later, in a letter dated June 1, 2009, Timothy offered to sell the strip of property to the Baileys for $10,000.00, and indicated he hoped to close within thirty days. The letter was sent on June 2, 2009, via UPS–Express, with no signature being required for delivery. The letter was delivered on June 3, 2009, by leaving the envelope in the garage, which was open due to the workers doing construction on the Bailey home. The Baileys discovered the letter on June 4, 2009, discussed the offer to sell, and tentatively agreed to counter offer in the amount of $2,500.00 to $3,000.00.

On the following day, June 5, 2009, Elizabeth Bailey received a call from her son, who was home alone, that there were several men in their backyard hacking down the fence with axes. When John Bailey arrived home, he discovered that several sections of the fence were gone. Timothy McAlpin, who had authorized the tearing down of the fence, was not on the scene at this time, but arrived back soon after. He and John then began a heated discussion. All the while Timothy refused to put down the ax he was holding. Ultimately, the police were called. The police were able to convince Timothy to agree to do no further damage to the fence and yard for seven days.

Four days later, on June 9, 2009, Elizabeth came home to discover Timothy and other workmen in her backyard with a chain saw cutting into an arbor and hot tub deck along what Timothy said was the property line. Elizabeth called her attorney, who was able to convince Timothy over the phone to stop any further damage pursuant to the agreement made with the police the Friday before. Before leaving, Timothy told Elizabeth that he was coming back with a bulldozer on Friday, June 12, 2009, to finish the job.

The next day, June 10, 2009, the Baileys filed the instant lawsuit against Patti Tatum McAlpin only in her capacity as Executrix of the Estate of Kathryn Tatum, Timothy McAlpin, and his corporation, the J.D. McAlpin Group, Inc. The Baileys sought a determination that the fence was located upon the proper boundary line, or, in the alternative, that they had acquired the six-foot strip of land at issue by adverse possession or champerty. The Baileys also sought damages from the McAlpins for the removal of the fence and punitive damages for their conduct in taking down the fence. The Baileys successfully obtained a restraining order from the Fayette Circuit Court that prevented the McAlpins from doing any further harm to the fence. The named defendants filed an answer, a counterclaim asserting ownership of the strip of land inside the Bailey fence, and a motion to dissolve the restraining order.

Meanwhile, in October 2009, after the filing of the above complaint, Patti and Timothy conveyed a one-half interest in the property to Michael Ray Tatum and his wife, Susan Young–Tatum, who are

now parties to the suit as a result of their new interest in the property.

The trial court set an evidentiary hearing on the issue of a temporary injunction and left the restraining order in place pending the hearing. The Baileys moved the court for permission to replace the fence pending a decision. After brief discussion, the court obtained an agreement from the McAlpins and Tatums for the Baileys to replace the boards that had been removed from the fence.

Before a ruling was issued by the Court, the Baileys filed two motions: (1) a motion to dismiss the counterclaim as to Patti, due to the fact that she was not a party named in the original complaint and was never made a party to the action in her individual capacity and (2) a motion to file an amended complaint in order to add Patti in her individual capacity in order to make a claim for permanent possession of the property through adverse possession since more than fifteen years had elapsed at the time of the filing of the motion.

The parties filed motions for summary judgment, and on March 23, 2010, the trial court granted summary judgment in favor of the Baileys' claim to full title of the disputed strip of property inside the fence by virtue of champerty, but denied the Baileys' claim of title ownership through adverse possession. The trial court held that the Baileys' adverse possession of the six-foot strip at issue was terminated in June 2009 when Timothy removed the fence between the two properties. Thus, the Baileys' adverse possession was terminated two months short of the fifteen-year period required to obtain title by adverse possession. The case was set for trial by jury to resolve the damages issue.

The McAlpins filed a motion for summary judgment on the issue of whether the Baileys could recover punitive damages as the result of Timothy's actions.

The trial court granted the motion and subsequently denied the Baileys' motion to reconsider. In lieu of going to trial, the parties stipulated that the compensatory damages owed by the McAlpins to the Baileys was $5,000.00, and judgment was awarded in that amount. The McAlpins filed their notice of appeal on June 10, 2010, and the Baileys filed their notice of cross-appeal on June 24, 2010.

In their direct appeal, the McAlpins argue that the trial court's ruling that the Baileys acquired the disputed strip of property by champerty is contrary to law and therefore the trial court's entry of summary judgment in this regard was in error. The Baileys argue that the trial court's entry of summary judgment in their favor based on the doctrine of champerty was proper and should be affirmed on appeal.

As this issue was decided by summary judgment, the following standard of review applies:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807

S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose,* Ky., 683 S.W.2d 255 (1985). Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor...." *Huddleston v. Hughes,* Ky.App., 843 S.W.2d 901, 903 (1992), *citing Steelvest, supra* (citations omitted).

*Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001) (footnote omitted).

BLACK'S LAW DICTIONARY defines champerty as "A bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds[.]" *Black's Law Dictionary* 231 (6th Ed.1990). Kentucky has codified the doctrine of champerty in Kentucky Revised Statutes (KRS) 372.070(1), which states, "Any sale or conveyance, including those made under execution, of any land, or the pretended right or title thereto, of which any other person has adverse possession at the time of the sale or conveyance, is void; but this section does not render void any devise of land in adverse possession." The purpose of champerty is to "discourage litigation, by prohibiting one who has a doubtful title, and who is not willing to sue upon his title, from selling it to another, and thus encourage strife." *Perry v. Wilson,* 183 Ky. 155, 208 S.W. 776, 779 (1919).

■ Thus, the Baileys claimed, and the trial court held, that they were entitled to a judgment quieting title to the disputed strip of property under the doctrine of champerty due to the fact that they were in actual possession of the property at the time of the conveyance of 2013 Bamboo Drive to Kathryn Tatum. However, as the McAlpins point out, "A plea of champerty is available to a party only in defense of a claim and may never be invoked affirmatively to establish title to land. It is a defense within the class often described as a shield rather than a sword...." *Ballard v. Moss,* 268 S.W.2d 35, 38 (Ky.1954) (internal citation omitted). *See also Royse v. Kentucky Female Orphan School,* 313 Ky. 428, 231 S.W.2d 704, 705 (1950).

In support of the proposition that the Baileys cannot use the doctrine of champerty to establish title to the disputed strip of property, the McAlpins and Tatums cite *Cowherd v. Brooks,* 456 S.W.2d 827 (Ky. 1970). In that case, two separate church congregations both claimed to be the owners of a church building in Frankfort, Kentucky. The building's original owner, the Methodist Church, attempted to convey the building by deed to the Zion Tabernacle; however, the Little Church of Jesus Christ claimed to be the true owner of the building through adverse possession. *Id.* at 828. The trial court found that the Little Church of Jesus Christ had been adversely occupying the building, but that it had failed to do so for the requisite statutory period of fifteen years. *Id.* at 830–31. The Kentucky Supreme Court explained the doctrine of champerty as follows:

> [A] conveyance of lands held adversely by a third person is champertous, it is void as to the person in possession and his privies, even though the conveyance is made in good faith and for a valuable consideration. As against the person in adverse possession, no right or title is passed or transmitted from the grantor to the grantee by the deed; title re-

mains in the grantor, and may be subsequently purchased from him by the adverse possessor during the pendency of a suit against such possessor by the grantor for the benefit of the champertous grantee.

*Id.* at 830–31. Because the Little Church of Jesus Christ adversely possessed the property at the time of the transfer, the Court voided the sale of the property to Zion Tabernacle with the finding that the attempted conveyance was champertous. But, the Court explicitly stated, "However, it has not been shown that the adverse possession by appellees has run for the statutory period and *thus the title does not vest in the adverse possessors.*" *Id.* (Emphasis added).

▮▮▮ Applying this to the case at bar, the trial court improperly found that the Baileys were entitled to the property based on the doctrine of champerty. Instead, the transfer of the property from Patti and Michael to Kathryn was champertous and was therefore void. The trial court erroneously entered a judgment quieting title with the Baileys based on the doctrine of champerty, and we reverse that portion of the judgment. While the Baileys were adversely possessing the portion of 2013 Bamboo Drive at issue in this case when the transfer was made, the doctrine of champerty merely invalidates the transfer of the property to Kathryn and would have allowed the Baileys to purchase the property from Patti and Michael.

This case is further complicated by the fact that the Baileys went on to adversely possess the disputed property after the champertous transfer. The trial court held that the Baileys did not adversely possess the property for the required statutory period and thus denied them judgment under this theory. On cross-appeal, the Baileys challenge this holding, arguing

that they acquired title to the property via adverse possession.

In support of this argument, the Baileys argue that they satisfied the elements of adverse possession. "In order to establish title through adverse possession, a claimant must show possession of disputed property under a claim of right that is hostile to the title owners interest. Further, the possession must be shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years." *Phillips v. Akers,* 103 S.W.3d 705, 708 (Ky.App.2002) (citing *Tartar v. Tucker,* 280 S.W.2d 150, 152 (Ky.1955)).

The Baileys argue that their possession of the six-foot strip of land was hostile, actual, and under a claim of right because they believed the property belonged to them and put a fence up enclosing the property. Further, they landscaped the property and installed an arbor and deck for a hot tub on the disputed property. The Baileys argue that "hostility" does not mean the McAlpins had to have known they were taking the property and that hostility can instead happen by mistake. *See Tartar, supra.* The Baileys argue that the fence and improvements rendered their possession open and notorious, and exclusive because the McAlplins and the Tatums had notice of their possession and could not get to the property without removing the fence, etc.

We agree with the Baileys that they satisfy the above elements of adverse possession. The question then becomes whether they adversely possessed the strip of land for fifteen years, the statutorily required period. The McAlpins and Tatums argue that the trial court correctly determined that when Timothy McAlpin removed the fence, it terminated the adverse possession. The Baileys argue that even with the temporary removal of the fence, they still continued to occupy the

disputed strip of property adversely. Further, they argue that a fence or other marking is not required or dispositive of the open or notorious nature of the possession. *Kentucky Women's Christian Temperance Union v. Thomas*, 412 S.W.2d 869 (Ky.1967).

We agree with the Baileys that a fence is not required to designate the open and notorious possession of a property. However, when Timothy McAlpin tore down the fence and expressed his clear intent to retake possession of the property, the Baileys' adverse possession was terminated. Any subsequent possession of the property was done with the McAlpins' permission, thus defeating the Baileys' claim of adverse possession. Thus, the trial court correctly held that the Baileys were not entitled to title by adverse possession.

■ The Baileys also argue on appeal that the trial court improperly denied them punitive damages. The trial court held that "the facts of this case simply do not rise to oppression, fraud, or malice as defined in KRS 411.184(1)(a), (b), and (c)." We agree with the trial court that punitive damages are not warranted in this case and therefore affirm the May 18, 2010, order in this regard.

■ Finally, the McAlpins and the Tatums argue on appeal that the Baileys are not entitled to compensatory damages for the removal of the encroaching fence. They first argue that if this Court were to decide the champerty issue in their favor, as we have done, this issue would be rendered moot. However, the Baileys asserted to the trial court below that they were entitled to an award of damages even if the McAlpins prevailed upon their claim to ownership of the disputed strip of property.

■ The permissible ways to stop the accrual of a claim to ownership by adverse possession are to retake possession of the property or file suit before the statute of limitations runs. *Petty v. Petty*, 265 Ky. 15, 95 S.W.2d 1122, 1124 (1936). The McAlpins and the Tatums argue that the only way for them to retake possession was to tear down the Baileys' fence, which they argue was an "encroachment" on their property.

In *Reed v. Mercer County Fiscal Court*, 220 Ky. 646, 295 S.W. 995 (1927), the Court was asked to review an award of damages for the destruction of a fence that was not an encroachment. The Court held that the property owner was entitled to the value of his fence at the time of the injury, citing the principle that one who has negligently destroyed the property of another is required to compensate the injured person for the fair value of the property.

The McAlpins and the Tatums argue that the rule espoused in *Reed* cannot apply to the instant case because the fence was an encroachment and was removed only after written notice to the encroaching party; advanced written notice of the property owner's intention to remove the encroaching fence; and adequate opportunity to the encroaching party to remove the encroaching fence.

We disagree with the McAlpins and the Tatums on this issue. The three or four days that elapsed between the written notice of intent to remove the fence and the actual removal and damage to the fence does not amount to "advanced written notice" of their intent or "adequate opportunity" for the Baileys to remove the fence. Thus, even if the fence was an encroachment, it does not appear that the McAlpins acted reasonably in this regard. Thus, we agree with the Baileys that they are still entitled to compensation for the damage to their fence.

Based on the foregoing, we reverse the trial court's summary judgment in favor of the Baileys on the theory of champerty. We affirm the trial court's judgment that the Baileys were not entitled to title by way of adverse possession. We affirm the trial court's ruling that punitive damages were not warranted in this case. Finally, we affirm the trial court's ruling that the Baileys were entitled to compensatory damages for the damage to their fence. We remand this case to the trial court for proceedings consistent with this opinion.

ALL CONCUR.