## THOMPSON et al. v. RATCLIFF.

Court of Appeals of Kentucky.
Jan. 25, 1952.

Wm. R. McCoy, Jr., Earle Cassady, Inez, for appellants.

Baird & Hays, Pikeville, Moses Alley, Matewan, W. Va., for appellee.

CLAY, Commissioner.

Appellee brought this action to quiet his title to coal and minerals lying under a 35 acre tract of land in Martin County, and to recover damages. He claimed both a record title and adverse possession. The Chancellor adjudged in his favor.

Appellee proved a good record title back to the Commonwealth. However, the original patent was junior to the one under which appellants claim. There is a serious question as to whether or not appellee owns this property by virtue of his record title, but we believe there was sufficient evidence to sustain the judgment on the ground of adverse possession.

Appellants, and their predecessors, even if they had the superior record title, prior to 1921 had not attempted to exercise any dominion over the property since their original patent was issued in 1865. On the other hand, appellee's predecessors, at least since 1900, have lived on the land, built houses, cultivated the soil, mined coal, and from time to time have done acts of a possessory nature while claiming the tract as owners under patents issued in 1866 and 1868.

Although the evidence establishes that appellee's predecessors went onto the property in 1899 or 1900, it is appellants' contention that such original possession has been interrupted and broken, and has not been continuous. They rely upon the rule laid down in Flinn v. Blakeman, 254 Ky. 416, 71 S.W.2d 961, which was followed in Fletcher Lumber Co. v. Fordson Coal Co., 311 Ky. 19, 223 S.W.2d 175. The general principle set forth in those opinions is that adverse possession must be *continuous* to oust the true owner; otherwise, the latter's constructive possession reasserts itself

whenever the disseizor abandons his occupancy even for a short period of time. It was said that the adverse possessor must keep his flag flying on the property at all times, without interruption.

 The requirement of continuous occupancy is a sound one. However, it does not mean that the disseizor in person need be present on the premises at all times. The nature and required continuity of adverse possession is explained in Combs v. Ezell, 232 Ky. 602, 24 S.W.2d 301. It was there held continuous occupancy did not require that any person need live on the land. The important consideration is whether or not the physical use of the property by the owner or his representative, the erection of structures, or the keeping of chattels thereon demonstrates that he is asserting dominion over the property. It was pointed out that after one has gone into adverse possession, its continuity may be broken by: (1) an act of the real owner; (2) intrusion of a stranger; or (3) abandonment by the occupant. See also 1 Am.Jur., Adverse Possession, Section 168. In the light of these principles, we will examine the evidence.

The proof shows the original claimant was James M. Stepp, to whom the patents of 1866 and 1868 were issued. Whether or not he actually occupied the land prior to about 1900 is not established. His grandson testified that when he was a young boy his father (the son of James M. Stepp) built a home on this property and the family moved there. The father died in 1901. At that time the house had been built, some of the land had been cleared, and a small coal mine had been opened and used. This witness testified that after his father died his mother married again "and rented the place until I married." He stated that after his marriage he went back to the land and lived there until about 1916 or 1917. Along about that time he sold the minerals to other parties through whom appellee claims.

It appears the original log home burned down in 1908, but soon thereafter a new cabin was built. Apparently tenants of the mother occupied either the log house or the cabin, or at least mined coal on the property. The brother of this witness confirmed the occupancy of the property by his father, his mother, and his brother.

There is also evidence that this tract was always known as the "Stepp property." One of the Stepps sold the surface to a Mr. Taylor in 1919, and the latter lived on the land until 1925.

The proof does not establish with positive certainty that the Stepps were in actual physical occupancy of the land for a continuous period of 15 years after 1900. Naturally the witnesses' memory of events that far in the past could not be very positive. However, we think the evidence does clearly show: (1) the Stepps had an apparently valid record title to this property; (2) at least since 1900 until the present the members of that family or their grantees have considered themselves its true owners and have exercised all of the rights of ownership therein. They built houses on the property, lived on it, cultivated it, mined it, leased it, and conveyed it by deed. At least up until 1921 none of the Stepps or their grantees did any act inconsistent with their apparent ownership and absolute dominion of this property.

 While there may have been interruptions in the actual occupancy of the land for temporary periods, the evidence is convincing that at no time did the adverse claimants abandon the premises. On the other hand, they were committing what in law must be considered a continuing trespass as against the true owners, assuming appellants' predecessors to have been such. For this reason we believe the proof would amply support the Chancellor's finding that appellee's predecessors openly, adversely, and continuously possessed this land for a period of longer than 15 years prior to 1921.

 Appellants further contend that if the adverse possession might otherwise have been continuous, the running of time was stopped by virtue of a suit to quiet title brought by their predecessors against appellee's predecessors in 1903. That suit is still pending; no steps having been taken in it since the filing of an amended petition in 1904. It is true that the filing of a suit

involving the title to or possession of land will toll the running of the statute of limitations insofar as adverse possession is concerned, for the purposes of that suit. Yet it is well settled that if such suit is abandoned it does not affect the continuity of the adverse possession, and even if it is not abandoned, it neutralizes the statute of limitations only for the purposes of that particular controversy. See Martin v. Hall, 152 Ky. 677, 153 S.W. 997, L.R.A. 1918A, 1041; De Ridder's Unknown Heirs, etc. v. Belknap, 312 Ky. 185, 226 S.W.2d 948. Both of these propositions militate against appellants' position. The former suit has clearly been abandoned, and since no actual change of possession was brought about as the result of its being filed, it could have no affect whatsoever upon the adverse possession shown in this independent action.

We believe the evidence fully supports the Chancellor's decision.

The judgment is affirmed.

COMBS, J., not sitting.