**Electronically Filed
Supreme Court
SCWC-12-0001024
17-MAY-2016
08:10 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

HOVEY B. LAMBERT, TRUSTEE UNDER THAT HOVEY B. LAMBERT TRUST, an unrecorded Revocable Living Trust Agreement dated April 5, 2002, Respondent/Plaintiff-Appellee,

vs.

WAHA (k); PAHUPU (k); RAHELA KANIU; GEORGE KAKELAKA LUA; CLARENCE LUA; ROSE DAVIDSON LUA; GEORGE LUA; ARDYS LUA; KENNETH LUA; ELLEN LUA; DELARINE TEENEY, also known as DELIRINE GALLAGHER; VIOLET LUA, also known as VIOLET OHUMUKINI; ARTHUR OHUMUKINI; MELODY OHUMUKINI; SIMEON LUA, also known as SIMEON LANI LUA; MAKAHIWA K. LUA, JR.; DAWN K.T. WASSON; JOANNA THOMPSON; HOWARD LUA, also known as HOWARD KEAWE LUA; TONI-SUE LUA; JEREMY K. LUA; JOEL LUA; JENILYNNE LUA LONGI; PATRICIA MALIA LUA MATAGI; GRAYCE DEAN; GERALDINE ROBERTS; VICKIE PILI; FALEMA'O PILI; JAMES LUA; PAULINE THORNTON, also known as PAULINE LUA; ROBERT LUA; JANICE L. KAI; JEAN P. CARSON; LAURENCE LUA; MARGO HOWLETT; ETUATE FA, also known as EDWARD FA; JOELENE FA; MARIA LUA KAMAI, also known as MARAEA KAMAE; LEONARD LUA; LORRAINE LUA; LEONARD R. LUA, JR.; EVELYN MAKAVECKAS; HENRY KAMAE, JR.; KANE KAMAE; KENNETH KAMAE; KLENNMEYER KAMAE, SR.; HARRIET KAMAE; KAY-VOLA SHANNON; KWEN-LYNN BRANDOW; CRAIG T. BRANDOW; HAZEL LUA NEMOTO; LAWRENCE NAOKI NEMOTO; LARYNELL NEMOTO-HUSEMANN, also known as GIGI GALDONES; TYRONE GALDONES; HEIDI K. KELEOPAA; KIANA N.H. JODELL; DAWNE BALDERSON, also known as DONNA SMITH; MAUREEN HARDIN; JOEL K. LUA; CYNTHIA LUA; SAMUEL LUA, also known as SAMUEL MASAO LUA; CAROLYN LUA; ROBERT E. MASSEY; DANIEL L. MASSEY; CAROL L. MASSEY; ROBIN ING; AMY DRUMMUNDO; MAILE VANAMAN, also known as MAILILEI VANAMAN; GEORGE LUA, also known as GEORGE POOKELA LUA; KALLEN LUA; INGRED MAILE; STRAIDE LUA; LANELL LUA; WARREN LUA; ROSE KOLUANA LUA; THELMA

LUA, also known as THELMA WHITE, also known as LANI WHITE; PROPERTY RESERVE, INC.; ANA TEKIATA FINAU; LUCY LEIAHOLA GIRELLI; GEORGE NEHEMIA NIHIPALI, JR.; ROSEMARY MONTANO; COLLEEN CARRIER; JEFFREY LUA; HARMONY ELAM; ELIZABETH BAL; HYRUM K. YEE POONG; MARGARET-ANN LUA; MARIAN KAPANUI; ANNETTE LAMM; SAFFIRE MAKAENA; ERICA MASSEY; JUANITA KAHANU POST; KEINARD HANS POST; KEINARD K. POST; WALTER SHANNON; GEORGE SHANNON; KATHLEEN SHANNON; DEPARTMENT OF TAXATION OF STATE OF HAWAII; UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE; DEPARTMENT OF PLANNING AND PERMITTING, CITY AND COUNTY OF HONOLULU; CHILD SUPPORT ENFORCEMENT AGENCY OF STATE OF HAWAII; HAWAII PACIFIC FEDERAL CREDIT UNION, Respondents/Defendants-Appellees,

and

LESIELI TEISINA, Petitioner/Defendant-Appellant,

and

PENISIMANI TEISINA, Petitioner/Intervenor-Appellant,

and

MALTBIE K. NAPOLEON, Respondent/Party-In-Interest-Appellee.

SCWC-12-0001024

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0001024; CIVIL NO. 09-1-2529)

MAY 17, 2016

NAKAYAMA, ACTING C.J., POLLACK, AND WILSON, JJ., AND CIRCUIT JUDGE PERKINS, IN PLACE OF RECKTENWALD, C.J., RECUSED, AND CIRCUIT JUDGE KIM, IN PLACE OF McKENNA, J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

I.      INTRODUCTION

This case arises out of a dispute over title to a parcel of land in Lāʻie, Oʻahu, referred to as Parcel 33, in which the ownership interests of individuals holding estates in

common were challenged by a co-owner of the property as the statutory period for adverse possession was nearing completion. Three primary issues are presented: (1) whether the statutory period for adverse possession tolls as to a party named in the quiet title action while litigation is pending; (2) whether the statutory period for adverse possession tolls for a tenant in common who is not joined as a party until later in the litigation; and (3) whether, on summary judgment, proof that a tenant in common built a house on the portion of the parcel over which he or she is asserting an adverse possessory interest is sufficient to demonstrate good faith, as required by statute and caselaw involving adverse possession of a property held in tenancy in common. For the reasons stated below, we hold that the statutory period for adverse possession tolls for a named party to the litigation but continues to accrue for unnamed claimants. We further hold that the facts of this case satisfy the evidentiary burden on summary judgment of demonstrating compliance with the good faith requirement prescribed by statute and under the common law in cases involving adverse possession against cotenants.

## II.    BACKGROUND

### A.    Relevant Facts

The property in dispute includes two parcels of land in Lā'ie, O'ahu; the first is referred to as Parcel 33 and the

second is referenced by the parties as a piece of Kuleana land (collectively Property). Lesieli Teisina (Lesieli) and Penisimani Teisina (Peni) (collectively, the Teisinas) acquired their interest in Parcel 33, on July 24, 1991, by quitclaim deed from Peter K. Lua for $25,000.[1] The deed indicated that it conveyed "title, equity & [i]nterest to all 10,000 [s]quare ft." within Parcel 33 (10,000-square-foot parcel). The quitclaim deed was recorded on March 17, 1997. According to a certificate of title submitted by Hovey V. Lambert as Trustee under the Hovey B. Lambert Trust (Lambert), the Teisinas' interest can be traced to Makahiwa K. Lua, who received an undivided ½ interest in Parcel 33 from his brother and shared his undivided ½ interest with Hattie Lua Nihipali.

In 1991, the Teisinas erected a house (a single-story structure consisting of three bedrooms, 1½ baths, and a living room) on the 10,000-square-foot parcel, where they raised their children and lived continuously until the partition sale of the Property in 2012. During the period in which they lived at their home, the Teisinas expanded the house into a 5,840-square-foot, two-story structure, consisting of eight bedrooms and 5½

---

[1] The $25,000 amount is stated in a declaration submitted by Peni. Attached to the declaration were copies of checks totaling approximately $11,000 issued by Peni to Peter K. Lua from August 1991 to October 1992. Peter K. Lua averred in his affidavit, attached by Peni to his declaration opposing Lambert's summary judgment motion, that he "obtained money for the sale of [the property] from [the] Teisina[s]," although he did not state the specific amount that he received.

bathrooms, with plumbing, electric connection, and running water, so as to accommodate their children, including ten adopted children.  In 2010, the house was valued at $393,200.

In March 1997, Peni conveyed 0.023 acres of his interest in the 10,000-square-foot parcel to Etuate and Joelene Fa (collectively, the Fas) as tenants by the entirety by quitclaim deed.  Also by quitclaim deed, recorded in April 1997, Peni conveyed 0.012 acres of his interest in Parcel 33 to Dawn K.T. Wasson (Wasson).

### B.    Procedural Background

### 1.    Circuit Court Proceedings

On October 28, 2009, Lambert filed a complaint to quiet title and for partition (quiet title action) of the Property in the Circuit Court of the First Circuit (circuit court).  The quiet title action named Lesieli and numerous other individuals as defendants; however, Peni was not named.  In October 2010, upon motion by Lambert, the circuit court entered default against Lesieli in the quiet title action; subsequently, the default was set aside pursuant to a motion filed by Lesieli. In support of Lesieli's motion to set aside default, both Lesieli's attorney and Peni had filed declarations stating that Peni should be named as a defendant.  The motion to set aside default was filed in conjunction with Lesieli's answer to Lambert's quiet title action.  The answer asserted adverse

possession as an affirmative defense. Lesieli did not file a cross claim against any of her codefendants.

On January 3, 2011, Lambert moved for summary judgment to quiet title in the Property in himself and the other cotenants, including Lesieli. Lambert submitted various documents purporting to indicate the various ownership interests of the cotenants. The result, Lambert argued, was that he had a 6769/10976 interest. Finally, Lambert also requested that the Property be sold at a partition auction pursuant to Chapter 668 of the Hawai'i Revised Statutes (HRS).

Lesieli opposed Lambert's summary judgment motion, arguing that she owned 10,000 square feet of Parcel 33 and that Peni was an indispensable party to the action. Lesieli also asserted that she and Peni had been in exclusive possession of the 10,000-square-foot parcel for 20 years, "paid for and openly built a two-story house in full view of everyone," "raised their children" there, obtained permits to build on it, paid taxes, "utilities, water and electric bills," entered "into an easement agreement" concerning the 10,000-square-foot parcel, "built a fruit stand," and operated a farm on the 10,000-square-foot parcel from 1991 onwards.[2]

---

[2] In support of her adverse possession defense, Lesieli attached the following documents: the quitclaim deed that she and Peni received for the 10,000-square-foot parcel; copies of check payments that Peni remitted to Peter K. Lua, the Teisinas' predecessor-in-interest; a history of payments
(continued. . .)

On January 5, 2011, Lesieli moved to dismiss the complaint (Precondition Motion),[3] arguing that Lambert had failed to pay $750.00 to Lesieli's attorney in accordance with a dismissal order previously entered on June 3, 2009 (2009 Dismissal Order), in an earlier partition action concerning the same Property filed in the circuit court by Lambert's mother. In a subsequent motion to dismiss the complaint, filed on January 11, 2011, Lesieli asserted that Lambert's failure to name Peni as an indispensable party in the quiet title action required its dismissal (Indispensable Party Motion). The circuit court denied the Precondition Motion and the Indispensable Party Motion as well as a motion to reconsider the denial of both motions.

In an order issued on June 20, 2011, the circuit court granted Lambert's summary judgment motion, quieted Lambert's title in relation to the ownership interests of the parties

---

(. . .continued)
that Peni paid to the Board of Water Supply from June 2008 to August 2010 for the 10,000-square-foot parcel; the right of entry to the property that the Teisinas entered into with the Hawaiian Electric Company and Verizon Hawai'i; the building permits granted to Peni to add to the house that the Teisinas built on the 10,000-square-foot parcel; and photos of the house that the Teisinas built on the 10,000-square-foot parcel.

[3]     In relevant part, the 2009 Dismissal Order provided as follows: "Plaintiff shall pay Defendants Fa $750.00, and shall also pay Defendant Penisimani Teisina $750.00 for their respective attorneys['] fees and costs as a precondition to filing a subsequent quiet title and partition action against them concerning the Subject Property . . . ."

named in Lambert's action, and appointed a commissioner to perform a partition sale of the Property (Order Quieting Title). The circuit court determined that Lambert had a 6769/10976 interest in Parcel 33 and that Lesieli had a 3/5824 interest in Parcel 33. The Order Quieting Title did not address Lesieli's adverse possession defense, but the circuit court's ruling--that Lesieli has only a minute interest in Parcel 33--was an implicit rejection of Lesieli's adverse possession defense.

In July 2011, Peni moved to intervene, claiming an interest in Parcel 33 and the house on that parcel. Peni thereafter filed his proposed answer, in which he asserted adverse possession as an affirmative defense. In objecting to the motion to intervene, Lambert argued, inter alia, that Peni had no interest in Parcel 33 since he conveyed his interest away on two occasions.[4] On August 31, 2011, the circuit court granted Peni's motion to intervene.

In September 2011, Lambert moved for summary judgment as to Peni's interest in Parcel 33 and for a determination of the Teisinas' interest in the house on Parcel 33. In opposition to this motion, Peni filed a declaration in which he averred

---

[4] According to Lambert's calculations, based on the deed that the Teisinas received from Peter K. Lua, Peni's interest in Parcel 33 was 51.95 sq. ft. Because Peni conveyed 0.023 acres (1001.88 sq. ft.) to the Fas and 0.012 acres (522.72 sq. ft.) to Wasson, Lambert concluded that Peni would have no remaining interest.

that he purchased the 10,000-square-foot parcel with Lesieli and that he and Lesieli received a deed from Peter K. Lua as tenants by the entirety.

As support for his declaration, Peni attached copies of numerous documents related to the purchase, maintenance, and use of the 10,000-square-foot parcel. Additionally, Peni submitted declarations from Valu Pauni (Pauni), Feao Heimuli (Heimuli), and Tomasi Naeata (Naeata). The declaration of Pauni stated that he assisted in expanding the Teisinas' house on the 10,000-square-foot parcel--the house in which the Teisinas raised their children and 10 adopted children. The declaration of Heimuli averred that the Teisinas built the house on the 10,000-square-foot parcel in 1991, shortly after they purchased it from Peter K. Lua, and that he assisted in the original construction. Naeata's declaration also stated that he assisted Peni in building the house on Parcel 33 in 1991 and the re-wiring of the expansion.

On November 23, 2011, the circuit court granted Lambert's motion for summary judgment as to Peni's property interest, determining that Peni had no interest in Parcel 33 (Order Regarding Peni's Interest). Consequently, the circuit court implicitly rejected Peni's adverse possession defense based upon the circuit court's conclusion that Peni "has no title or interest" in the Property.

On June 5, 2012, the circuit court's commissioner sold Parcel 33, excluding the house, to Lambert for $425,000[5] and the Kuleana for $125,000. The circuit court confirmed the sale and valued the Teisinas' house on Parcel 33 at $150,000 of the $425,000 purchase price (Confirmation of Sale Order).

## 2. Intermediate Court of Appeals (ICA) Proceedings

On appeal, the Teisinas argued that Lambert was barred from maintaining the quiet title action (1) for failure to pay Peni $750.00 in accordance with the 2009 Dismissal Order and (2) because Peni was not named as a defendant, despite being an indispensable party. The Teisinas also contended that they are entitled to the 10,000-square-foot parcel within Parcel 33 by adverse possession.

In the answering brief, Lambert argued that he was not precluded from commencing an action to quiet title against Lesieli based on noncompliance with the 2009 Dismissal Order because the order did not condition the commencement of an action against Lesieli upon payment of $750 to Peni or Fa. Additionally, Lambert maintained that Peni was not a necessary party to the quiet title action because any interest he has in Parcel 33 had already been conveyed to the Fas and Wasson. Further, Lambert contended that even if Peni was a necessary

_____

[5] This amount was $25,000 more than the bid for Parcel 33 with the house.

party, joinder, rather than dismissal, is the proper remedy because Peni could be feasibly joined. Finally, Lambert claimed that the Teisinas have not met the elements for an adverse possession claim against cotenants, specifically the statutory period and the requirement of good faith. As to the statutory period, Lambert argued that his filing of the quiet title action on October 28, 2009--less than 20 years from when the Teisinas started occupying Parcel 33 in July 1991--terminated the accrual by the Teisinas of the required statutory period for adverse possession. Lambert asserted that the Teisinas were unable to satisfy the good faith requirement of HRS § 669-1(b)[6] because the Teisinas did not record their quitclaim deed until 1997. It follows, Lambert maintained, that the Teisinas could establish

---

[6]     HRS § 669-1(b) provides as follows:

> Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years. Action for the purpose of establishing title to a parcel of real property of greater than five acres may be brought by any person who had been in adverse possession of the real property for not less than twenty years prior to November 7, 1978, or for not less than earlier applicable time periods of adverse possession. For purposes of this section, <u>any person claiming title by adverse possession shall show that such person acted in good faith. Good faith means that, under all the facts and circumstances, a reasonable person would believe that the person has an interest in title</u> to the lands in question and such belief is based on inheritance, a written instrument of conveyance, or the judgment of a court of competent jurisdiction.

HRS § 669-1(b) (1993) (emphasis added).

good faith starting only in 1997, which falls short of the required 20-year statutory period. Lambert additionally argued that the Teisinas failed to abide by the actual notice requirement announced by this court in cases involving adverse possession claims in properties held in cotenancy. According to Lambert, the Teisinas had the duty to actually notify their cotenants of their adverse possession claim, a requirement that the Teisinas failed to satisfy.

In their reply, the Teisinas asserted that Lambert's 2009 action did not terminate their accrual of the required 20-year statutory adverse possession period because Lambert's failure to pay Peni $750 rendered the 2009 action a nullity. Hence, the Teisinas maintained that Lambert's 2009 action was incapable of terminating the Teisinas' adverse possession period. Additionally, the Teisinas contended that they are exempt from the requirement of actually notifying their cotenants of their adverse possession claim because their cotenants already had actual knowledge that the Teisinas were claiming adversely to their respective interests. Accordingly, the Teisinas concluded that they satisfied the good faith requirement of adverse possession against cotenants under the common law.

The ICA dismissed the Teisinas' appeal for lack of appellate jurisdiction. After accepting the Teisinas'

application for writ of certiorari, we concluded that the Confirmation of Sale Order by the circuit court constituted an appealable order and remanded the case to the ICA for disposition of the Teisinas' appeal.

### 3. ICA's Disposition on Remand

On remand, the ICA held that the language of the 2009 Dismissal Order did not bar Lambert from commencing a quiet title action against Lesieli because it expressly limited the requirement that Lambert pay $750 before commencing a subsequent quiet title action to the Fas and Peni. The ICA therefore affirmed the circuit court's order denying Lesieli's Precondition Motion.

As to Lesieli's Indispensable Party Motion, the ICA held that "[t]he circuit court did not err in denying" it "because dismissal was not the proper remedy for Lambert's failure to name [Peni] in his complaint." The ICA reasoned that, although Peni is a person that should be joined if feasible under Hawai'i Rules of Civil Procedure (HRCP) Rule 19, he was not an indispensable party under that rule; hence, dismissal was unnecessary. The ICA also noted that Peni's joinder was feasible because he became an intervenor at a later stage of the circuit court proceedings. Consequently, the ICA affirmed the circuit court's order denying Lesieli's Indispensable Party Motion.

13

As to the circuit court's denial of Lesieli's motion for reconsideration of her two motions to dismiss, the ICA held that the circuit court did not abuse its discretion because "Lesieli presented no 'new evidence and/or arguments that could not have been presented during the earlier adjudicated motion[s].'" The ICA therefore affirmed the circuit court's order denying Lesieli's motion for reconsideration.

Finally, the ICA held that the circuit court erred by granting both summary judgment motions in their entirety. The ICA explained that Lesieli was able to raise a genuine issue of material fact by producing the quitclaim deed that purported to convey to her and Peni the entire 10,000-square-foot parcel within Parcel 33. The ICA therefore concluded that whether Lesieli has an interest to the entire 10,000-square-foot parcel within Parcel 33 or an interest to only a portion of the 10,000-square-foot parcel "was an issue of fact to be determined at trial, not on summary judgment." However, the ICA held that "Lesieli's argument that she acquired the 10,000 square foot portion of Parcel 33 by adverse possession is without merit because she has not established possession for the required twenty-year period."[7]

---

[7] Chief Judge Nakamura would have affirmed the circuit court's orders in their entirety. In his view, the Teisinas "did not make any discernible argument based on a claim of paper title that the Circuit Court erred in determining that their interest in Parcel 33 was limited to a 3/5824

(continued. . .)

Additionally, the ICA held that there was a genuine issue of fact as to whether Peni "acquired a 10,000 square foot portion or a 103.9 square foot portion of Parcel 33 and this disputed fact is material to the determination of Penisimani's current interest, if any, in Parcel 33." The ICA did not address Peni's adverse possession defense; thus, it implicitly affirmed the circuit court's summary judgment ruling that rejected this defense.

The Teisinas, in their application for certiorari, challenge the ICA's rulings affirming the circuit court's denial of Lesieli's Precondition Motion and rejecting their affirmative defense of adverse possession.

### III.    STANDARDS OF REVIEW

### A. Factual Findings and Conclusions of Law

This court reviews a trial court's factual findings under the clearly erroneous standard. Marvin v. Pflueger, 127 Hawai'i 490, 495, 280 P.3d 88, 93 (2012) (citing Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004)).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A

(. . .continued)
undivided interest held by Lesieli." Hence, Judge Nakamura concluded that this argument had been waived. Had the issue not been waived, Judge Nakamura concluded, on the merits, that Lesieli failed to refute Lambert's documentary evidence establishing that Lesieli held only a 3/5824 undivided interest in Parcel 33, thereby failing to raise a genuine issue of material fact.

> finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Bremer, 104 Hawai'i at 51, 85 P.3d at 158 (alterations omitted) (quoting Beneficial Hawai'i, Inc. v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

Conclusions of law are reviewed de novo, under the right/wrong standard of review. Marvin, 127 Hawai'i at 495, 280 P.3d at 93; State v. Higa, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995).

### B. Motion for Summary Judgment

This court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citing Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

### C. 2009 Dismissal Order

"The interpretation or construction of a judgment, decree or order 'presents a question of law for the courts'" and is therefore reviewed de novo. State v. Guyton, 135 Hawai'i 372, 377, 351 P.3d 1138, 1143 (2015) (quoting Cain v. Cain, 59 Haw. 32, 39, 575 P.2d 468, 474 (1978)).

16

## IV.    DISCUSSION

### A. Precondition Motion

When the language of an order is plain and unambiguous, there is no room for construction, and its plain language necessarily must control.  Guyton, 135 Hawai'i at 387, 351 P.3d at 1144; see also Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 259, 948 P.2d 1055, 1100 (1997) (according "plain meaning" to this court's remand order in construing its scope).  The 2009 Dismissal Order states that Lambert "shall pay Defendants Fa $750.00, and shall also pay Defendant Penisimani Teisina $750.00 for their respective attorneys['] fees and costs as a precondition to filing a subsequent quiet title and partition action against them concerning the Subject Property."

The plain language of the 2009 Dismissal Order is clear that the payment of $750 is a precondition only to commencing a quiet title and partition action against Peni or the Fas.  The quiet title action was filed by Lambert against Lesieli, the Fas, and others, but it did not name Peni as a party.  Hence, the precondition concerning Peni under the 2009 Dismissal Order was not triggered, and the commencement of the current action did not violate the Dismissal Order.

The Teisinas also seem to argue that the precondition in the 2009 Dismissal Order concurrently applied to Lesieli

17

because she and Peni hold title as tenants by the entirety, and, thus, a quiet title action must necessarily name both of them as parties. Said differently, it is contended that because a quiet title action against Peni must name Lesieli as a codefendant, the $750 requirement under the 2009 Dismissal Order applies equally to Lambert's action against Lesieli. However, the quitclaim deed that the Teisinas received for the 10,000-square-foot parcel did not specify a tenancy by the entirety. HRS § 509-1 specifically states that

> [a]ll grants, conveyances, and devises of land, or of any interest therein, made to two or more persons, <u>shall be construed to create estates in common and not in joint tenancy or by entirety</u>, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or by entirety . . . .

HRS § 509-1 (1993) (emphasis added). Instead, the quitclaim deed to the Teisinas states that the grantor was conveying one part of Parcel 33 equivalent to 10,000 square feet "to Mr. Penisimani Teisina & Mrs. Lesieli Teisina," who are not otherwise identified or described; hence, it does not manifestly appear that the deed conveyed an interest in Parcel 33 to the Teisinas as tenants by the entirety. HRS § 509-1; <u>see</u> <u>Traders Travel Int'l, Inc. v. Howser</u>, 69 Haw. 609, 614, 753 P.2d 244, 247 (1988) (holding that if the parties "genuinely wanted to create a tenancy by the entirety," they should have so indicated such an intent on the documents).

18

Accordingly, the ICA correctly determined that the 2009 Dismissal Order "did not bar Lambert from filing his quiet title and partition action . . . because it was not filed against Penisimani."  Therefore, the ICA did not err by affirming the circuit court's denial of Lesieli's Precondition Motion.

### B.    The Affirmative Defense of Adverse Possession

The Teisinas argue that the circuit court erred in finding that they do not have superior title to the 10,000-square-foot parcel in Parcel 33 by virtue of adverse possession. Lesieli raised adverse possession as an affirmative defense to Lambert's quiet title action--an argument that she later pursued in opposing Lambert's initial motion for summary judgment.  Peni also raised the affirmative defense of adverse possession in the proposed answer that he filed with his motion to intervene and asserted adverse possession in opposing Lambert's motion for summary judgment as to his interest in Parcel 33.[8]  It is apparent that the Teisinas are not disputing Lambert's satisfaction of his initial burden on summary judgment to

---

[8]    During the hearing on Lambert's summary judgment motion against Peni, Peni's counsel asserted that Peni satisfied the 20-year statutory period of adverse possession because Lambert's 2009 complaint did not name him as a party and that he had paid taxes on the property.

19

establish a prima facie case;[9] their argument is that they were able to substantiate their affirmative defense of adverse possession, such that it became incumbent upon Lambert to disprove this defense--a burden that he failed to discharge. See U.S. Bank Nat'l Ass'n, 131 Hawai'i 28, 41, 313 P.3d 717, 730 (2013).

In order to support the defense of adverse possession on summary judgment, the defendant asserting it must "produce[] material in support of [the] affirmative defense." Id. (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 118, 526, 904 P.2d 624 540 (1995)). Thus, the Teisinas had the burden to produce admissible evidence to support the elements of adverse possession, which requires "actual, open, notorious, hostile, continuous, and exclusive possession for the statutory period." Wailuku Agribusiness Co. v. Ah Sam, 114 Hawai'i 24, 33—34, 155

---

[9]    The analytical framework for summary judgment is as follows:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citing Haw. Cmty. Fed. Credit Union, 94 Hawai'i at 221, 11 P.3d at 9).

P.3d 1125, 1134—35 (2007) (alteration omitted) (quoting Petran

v. Allencastre, 91 Hawai'i 545, 556—57, 985 P.2d 1112, 1123—24

(1999)).

> Actual, open, and notorious possession is established where a claimant shows "'use of the land to such an extent and in such a manner as to put the world on notice' by means 'so notorious as to attract the attention of every adverse claimant.'" "The element of hostility is satisfied by showing possession for oneself under a claim of right," and "such possession must import a denial of the owner's title." Continuity and exclusivity of possession require that the "adverse possessor's use of a disputed area . . . rise to that level which would characterize an average owner's use of similar property."

Id. at 33—34, 155 P.3d at 1134—35 (alterations omitted) (first

quoting Morinoue v. Roy, 86 Hawai'i 76, 82, 947 P.2d 944, 950

(1997); and then quoting Petran, 91 Hawai'i at 557, 985 P.2d at

1124). The statutory period required for adverse possession is

20 years. HRS § 669-1(b).

In cases where the party is asserting adverse

possession against a cotenant, "there is a 'special burden in

proving hostile possession' that requires the cotenants making a

claim of adverse possession 'to show that they had acted in good

faith in relation to their cotenants'" during the statutory

period. Id. at 34, 155 P.3d at 1135 (quoting Morinoue, 86

Hawai'i at 82, 947 P.2d at 950).

### 1. Lesieli's Adverse Possession Defense

Lambert commenced the quiet title action on October

28, 2009. By that time, Lesieli had been in possession of the

10,000-square-foot parcel for less than 20 years, as she

21

acquired her title in 1991. There is no evidence that Lesieli possessed the property before she obtained her title in 1991, and in her affidavit, Lesieli declared that she had been using and in possession of the property starting in 1991. Therefore, Lesieli failed to establish continuous possession for 20 years, as required by HRS § 669-1(b).

Additionally, Lambert's quiet title action disrupted Lesieli's accrual of the statutory period, so at no time during the pendency of this case did Lesieli satisfy the 20-year statutory period. See 3 Am. Jur. 2d Adverse Possession § 101 (2013) ("An adverse possession can be interrupted by the owner filing suit."); Henson v. Tucker, 630 S.E.2d 64, 67 (Ga. App. 2006) (holding that the statutory period for adverse possession is interrupted if the owner files a quiet title action); McAlpin v. Bailey, 376 S.W.3d 613, 619 (Ky. Ct. App. 2012) (holding that a permissible way to stop the accrual of a claim to ownership by adverse possession is to "file suit before the statute of limitations runs"); Flagg v. Faudree, 269 P.3d 45, 50 n.18 (Okla. Civ. App. 2012) (interrupting the accrual of an adverse possession claim may be effectuated by "the landowner, or someone [on] his behalf, act[ing] overtly to oust the adverse claimant"); Mahoney v. Tara, LLC, 107 A.3d 887, 891 (Vt. 2014) (concluding that "claims to possession by the title owner and against the adverse possessor will toll the statute of

limitations"). The Teisinas' argument that Lambert's quiet title action was unable to disrupt the running of the 20-year statutory period has no merit as to Lesieli because, as already discussed, the current action was validly commenced and did not violate the 2009 Dismissal Order. Accordingly, the circuit court correctly held that "Lesieli's argument that she acquired the 10,000[-]square[-]foot portion of Parcel 33 by adverse possession is without merit because she has not established possession for the required twenty-year period." Therefore, the ICA properly affirmed the circuit court's Order Quieting Title that implicitly rejected Lesieli's adverse possession defense.

## 2. Peni's Adverse Possession Defense

Peni was not named by Lambert as a defendant in the quiet title action. Hence, the circuit court would be "in no position to render a binding adjudication" against Peni's interest in Parcel 33 until Peni became a party to the action. Haiku Plantations Ass'n v. Lono, 56 Haw. 96, 102, 529 P.2d 1, 5 (1974) (holding that owners of the reversionary interest in the subject property should have been made parties in the litigation that concerned or could affect their interest and that failure to do so meant that any court decision affecting their interest did not bind the nonparty interest owners). Thus, the running of the 20-year statutory period as to Peni was not tolled by Lambert's commencement of the quiet title action in 2009. See

23

Snook v. Bowers, 12 P.3d 771, 782 (Alaska 2000) (holding that the running of the statutory adverse possession period was not tolled as to individuals not made parties to the litigation); McClellan v. King, 273 N.E.2d 696, 698-99 (Ill. App. 3d Dist. 1971) (concluding that a prior suit did not toll the statutory period for a subsequent action to quiet title); Thompson v. Ratcliff, 245 S.W.2d 592, 593—94 (Ky. 1952) ("[T]he filing of a suit involving the title to or possession of land will toll the running of the statute of limitations insofar as adverse possession is concerned, for the purposes of that suit.").[10]

Only when Peni intervened and became a party to the action, on August 31, 2011, did the running of the 20-year statutory period toll as to his interest. See Snook, 12 P.3d at 782 (holding that "litigation to which claimant is a party suspends the running of limitations" (quoting 2 C.J.S. Adverse Possession § 153, at 869 (1972))); Welner v. Stearns, 120 P. 490, 495 (Utah 1911) (holding that in cases where new parties are brought as defendants into a pending adverse possession action, the statutory period continues to run until the time

---

[10]     See also 2 C.J.S. Adverse Possession § 154 (2016) ("In some jurisdictions, the pendency of litigation to which the adverse claimant is a party, involving his or her title or right to the possession of the land, will suspend the running of the statute of limitations in the claimant's favor during the period covered by the particular suit or action. However, in some of these jurisdictions, the statute is considered as suspended only for the purposes of the action involved and not for any other action subsequently brought." (footnotes omitted)).

24

that such parties are brought into the case).  Because the Teisinas' possession of the 10,000-square-foot parcel started on July 24, 1991, the tolling date of the statutory period on August 31, 2011, occurred after the twenty-year period had elapsed, and, thus, Peni was able to satisfy the 20-year statutory period.  Welner, 120 P. at 495.

In support of his adverse possession defense, Peni filed a declaration in opposition to Lambert's motion for summary judgment, averring that he "purchased the land of 10,000 sq. acres [sic], parcel 33, with . . . Lesieli" and that he and Lesieli received a deed from Lua.  Peni stated in his declaration that he built a house, which was valued at $393,200 in 2010, after he and Lesieli purchased the 10,000-square-foot parcel in July 1991.  "The house is a two-story house with 8 bedrooms and 5½ bathrooms.  The area is 5,840 sq. ft. of gross living area."  Peni further averred that he and Lesieli lived and raised their children in the house.  Additionally, Peni stated that he "paid over $25,000 for [the 10,000-square-foot parcel] in July 1991[,] ha[d] lived on it continuously[, and had] paid water and electric bills for the house."  Finally, Peni stated that the 10,000-square-foot parcel "was not being used by [Lambert] or anybody else but [the Teisinas] for over 20 years."  Attached to Peni's declaration are various affidavits,

25

declarations, and other supporting documents related to the purchase, maintenance, and use of the 10,000-square-foot parcel.

The declaration of Pauni stated that the Teisinas raised their children and 10 adopted children in the house that they built on the 10,000-square-foot parcel. According to Pauni, he assisted Peni in extending the Teisinas' house, adding a second floor to it. The declaration of Heimuli averred that the Teisinas built the house on the 10,000-square-foot parcel in 1991, shortly after they purchased it from Lua. Although unclear, Heimuli seemed to state that the original house the Teisinas built consisted of a single story with three bedrooms, 1½ baths, and a living room. Heimuli maintained that he helped Peni build the original house and assisted in installing plumbing therein. Naeata's declaration stated that he assisted Peni in building the house on the 10,000-square-foot parcel. Naeata averred that the original house was built in 1991 and extended to a two-story house with eight bedrooms and six baths to accommodate their 10 adopted children. Naeata stated that he was the one who rewired the house.

Viewing the totality of the foregoing evidentiary submissions in the light most favorable to Peni, see Wailuku Agribusiness Co., 114 Hawai'i at 32, 155 P.3d at 1133, it shows various indicia of adverse possession sufficient to support Peni's claim of "actual, open, notorious, hostile, continuous,

and exclusive possession for the [20-year] statutory period."
Id. at 33—34, 155 P.3d at 1134—35 (2007) (alteration omitted)
(quoting Petran, 91 Hawaiʻi at 556—57, 985 P.2d at 1123—24); see,
e.g., Pebia v. Hamakua Mill Co., 30 Haw. 100, 100 (Haw. Terr.
1927) (holding that the totality of various acts of ownership--
including "actual possession, payment of all taxes by the
occupant, non-payment of any taxes by the alleged true owners,
repeated acts of leasing and mortgaging by the adverse
claimants, conveyance by the adverse claimants of a strip of
land over the tract in question for purposes of a roadway"--
satisfied the elements of adverse possession).

Pursuant to HRS § 669-1(b), however, "any person
claiming title by adverse possession shall show that such person
acted in good faith."  HRS § 669-1(b).  "Good faith means that,
under all the facts and circumstances, a reasonable person would
believe that the person has an interest in title to the lands in
question and such belief is based on inheritance, a written
instrument of conveyance, or the judgment of a court of
competent jurisdiction."  Id.  In this case, Peni produced a
quitclaim deed that he and Lesieli received from Peter K. Lua in
exchange for $25,000.  The quitclaim deed indicated that it was
conveying the 10,000-square-foot parcel within Parcel 33 to the
Teisinas.  The foregoing evidence, viewed in the light most
favorable to Peni, was sufficient to support a finding that Peni

27

complied with the statutory good faith requirement under HRS §
669-1(b).

Lambert argues that the Teisinas failed to comply with
the statutory good faith requirement because they did not record
their quitclaim deed to the 10,000-square-foot parcel until
1997; hence, according to Lambert, the Teisinas were unable to
show that they acted in good faith for the statutory adverse
possession period of 20 years.  However, HRS § 669-1(b) does not
require recording of a written instrument of conveyance in order
to show good faith.  HRS § 669-1(b) requires only the totality
of the facts and circumstances to be such that a reasonable
person would believe that he or she holds his or her interest
based on, as relevant here, a written instrument of conveyance.

Additionally, because Peni is a cotenant with the
other parties holding interests in Parcel 33,[11] he had the

---

[11]     The certificate of title that Lambert submitted with his January
3, 2011 motion for summary judgment against Lesieli indicated that the
Teisinas' interest can be traced, as relevant here, to Makahiwa K. Lua, who
received an undivided ½ interest in Parcel 33 from his brother.  He shared
his undivided ½ interest with Hattie Lua Nihipali.  This means that the
Teisinas hold their interest in Parcel 33 as tenants in common with the heirs
and grantees of Makahiwa K. Lua and Hattie Lua Nihipali, unless there is
proof that the tenancy in common was somehow terminated or severed.  A
"tenancy in common may be terminated by partitioning the property among the
several tenants in common, either by proceedings in partition, or by decree
in some other proceeding, or by agreement and division."  86 C.J.S. Tenancy
in Common § 17 (2006) (footnotes omitted).  In this case, there is no
evidence in the record that demonstrates any of the foregoing ways to
terminate a tenancy in common.  In addition, the grant from Lua to the
Teisinas of "one part of [Parcel 33] equivilent [sic] to 10,000 square ft."
was insufficient to effectuate a severance, because "[t]he conveyance by one
cotenant of a specific portion of the common property will not effect a
partition of the property."  86 C.J.S. Tenancy in Common § 17.

separate burden under the common law of showing a disputed fact as to whether he acted in good faith in relation to his cotenants.  Wailuku Agribusiness Co., 114 Hawai'i at 34, 155 P.3d at 1135.  Good faith under the common law typically means "that the tenant claiming adversely must actually notify his or her cotenants that he or she is claiming against them."  Id. (quoting Petran, 91 Hawai'i at 554, 985 P.2d at 1121) (emphasis omitted).  In three exceptional instances, less than actual notice to cotenants may fulfill the good faith requirement: (1) "where the tenant in possession has no reason to suspect that a cotenancy exists"; (2) "where the tenant in possession makes a good faith, reasonable effort to notify the cotenants but is unable to locate them"; or (3) "where the tenants out of possession already have actual knowledge that the tenant in possession is claiming adversely to their interests."  City & County of Honolulu v. Bennett, 57 Haw. 195, 209–10, 552 P.2d 1380, 1390 (1976).

In this case, Peni was able to produce evidence tending to establish his assertion that his cotenants already had "actual knowledge that [he] is claiming adversely to their interests," an exception to the actual notice requirement of Wailuku Agribusiness.  Viewing the evidence in the light most favorable to Peni, see Wailuku Agribusiness Co., 114 Hawai'i at 32, 155 P.3d at 1133, it can be inferred from the fact that Peni

29

built a house on the 10,000-square-foot parcel, a house that was later converted into a 5,840-square-foot, two-story structure in which Peni and his multi-member family lived continuously, that Peni's cotenants had actual knowledge of his adverse claim to a portion of Parcel 33.[12]

Accordingly, Peni was able to produce evidence supporting his adverse possession defense, and he thus raised a genuine issue of material fact with respect to ownership of Parcel 33. The burden thus shifted to Lambert to disprove Peni's adverse possession defense. See U.S. Bank Nat'l Ass'n, 131 Hawai'i at 41, 313 P.3d at 730. To this end, Lambert only argued that "[t]he Teisinas . . . make no effort to show [that] they acted in good faith to their co-tenants"; however, Lambert produced no evidence demonstrating that the Teisinas' cotenants lacked actual knowledge of Peni's adverse possession claim. Nor

---

[12] Lambert asserts that the Teisinas could not assert adverse possession because they failed to cross-claim against their codefendants--who are the Teisinas' cotenants. This argument is not dispositive because it is possible for a party to adversely possess the property interests of only some, and not all, cotenants. See Pebia, 30 Haw. at 113—14 (awarding the interest of one cotenant to another cotenant but leaving intact the interest of a third cotenant); Kaahanui v. Kaohi, 24 Haw. 361, 363 (Haw. Terr. 1918) (holding that the plaintiff adversely possessed the interest of one cotenant but not of the other). Similarly, Lambert contends that the Teisinas should have raised adverse possession as a counterclaim against him, but this is unavailing because adverse possession can be asserted as an affirmative defense, as the Teisinas did in this case. See HRCP Rule 8(c) (2000) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense.") Kekoa v. Robinson, 20 Haw. 565, 565-66 (Haw. Terr. 1911) (stating that "[a]dverse possession is an affirmative defense"); Kaneohe Ranch Co. v. Kaneohe Rice Mill Co., 20 Haw. 658, 666 (Haw. Terr. 1911) (accord).

did Lambert submit an affidavit averring his own lack of actual knowledge,[13] but even if he had, the dueling evidence bearing upon his actual knowledge would have presented a question of fact that cannot be resolved on summary judgment. Thus, the Order Regarding Peni's Interest erroneously granted Lambert's motion for summary judgment against Peni as to Peni's adverse possession defense, and it was incorrectly affirmed by the ICA.[14]

---

[13] In support of Lambert's summary judgment motion against Peni, Lambert attached only the deeds through which Peni conveyed his interest in Parcel 33 to the Fas and Wasson.

[14] Although the Teisinas indicate that one of the questions on which they seek this court's review is the propriety of the circuit court's denial of their Indispensable Party Motion for Lambert's failure to join Peni--who is purportedly an indispensable party--no discernible argument supporting this specific challenge is raised in their Application. Hence, this issue has been waived. See Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 212, 166 P.3d 961, 972 (2007) (concluding that an assertion unsupported by a discernible argument need not be considered); Taomae v. Lingle, 108 Hawai'i 245, 257, 118 P.3d 1188, 1200 (2005) (accord); HRAP 28(b)(7) ("Points not argued may be deemed waived."). Even if not waived, Peni was only a necessary party that could be feasibly joined according to the requirements listed under HRCP Rule 19(a). This is evidenced by the fact that, as the ICA noted, Peni was able to intervene in the action. Accordingly, the appropriate remedy would have been to order his joinder as a defendant in Lambert's action, not entry of a dismissal. HRCP Rule 19(a); Kellberg v. Yuen, 135 Hawai'i 236, 251, 349 P.3d 343, 358 (2015) ("If joinder is feasible, the court must order it."). Thus, the ICA properly affirmed the circuit court's denial of Lesieli's Indispensable Party Motion.

The Teisinas' challenge to the circuit court's denial of Lesieli's motion for reconsideration has also been waived because no discernible argument supporting the Teisinas' challenge can be gleaned from the Teisinas' Application. See Laeroc Waikiki Parkside, LLC, 115 Hawai'i at 212, 166 P.3d at 972; Taomae, 108 Hawai'i at 257, 118 P.3d at 1200. In any event, the Teisinas' challenge to the circuit court's denial of Lesieli's motion for reconsideration would also fail on the merits because neither Lesieli's motion nor any of the Teisinas' appellate papers identify "new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (quoting First Ins. Co. of Hawai'i, Ltd. v. Lawrence, 77 Hawai'i 2, 17, 881 P.2d 489, 504 (1994)).

## V.    CONCLUSION

For the foregoing reasons, we conclude that the ICA did not err in affirming the circuit court's denial of Lesieli's Precondition Motion and in vacating in part and affirming in part the Order Quieting Title.  However, the ICA erred in affirming that portion of the Order Regarding Peni's Interest that implicitly rejected Peni's adverse possession defense. Hence, we vacate that portion of the ICA Judgment on Appeal and that portion of the circuit court's Order Regarding Peni's Interest as to adverse possession.  In all other respects, the ICA Judgment on Appeal is affirmed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

R. Steven Geshell                   /s/ Paula A. Nakayama
for petitioners Lesieli Teisina
and Penisimani Teisina              /s/ Richard W. Pollack

Philip J. Leas,                     /s/ Michael D. Wilson
W. Keoni Shultz and
Trisha H.S.T. Akagi                 /s/ Richard K. Perkins
for respondent Hovey B Lambert,
Trustee under that Hovey B.         /s/ Glenn J. Kim
Lambert Trust, an unrecorded
revocable living trust agreement
dated April 5, 2002

