RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1287-MR

HOPE MCSWIGAN                                                    APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN S. LAPE, JUDGE
ACTION NO. 18-CI-02069

G1 PROPERTIES, LLC                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: TAYLOR, K. THOMPSON, AND L. THOMPSON, JUDGES.

TAYLOR, JUDGE: Hope McSwigan brings this appeal from a September 21,

2021, Findings of Fact, Conclusions of Law, and Judgment entered by the Kenton

Circuit Court determining that G1 Properties, LLC, acquired title by adverse

possession to certain real property located in Kenton County, Kentucky. We

affirm.

At issue in this appeal are two abutting residential properties – Lot No. 666 and Lot No. 667 of Park Hills Subdivision. Prior to 1987, legal title to both lots (Lot No. 666 and Lot No. 667) was held by a common grantor. By deed dated October 28, 1987, the common grantor conveyed Lot No. 666, which had a residence located thereon, to Douglas A. Gross. Thereafter, by deed dated April 8, 2005, Gross transferred title to Lot No. 666 to Douglas A. Gross and Andrea L. Gross, Trustee Under The Douglas A. Gross Revocable Trust Agreement (Gross Trust). And, on the same date, the Gross Trust then conveyed Lot No. 666 to G1 Properties, LLC (G1). Gross is a managing member of G1. It is undisputed that Lot No. 666 has been used as a rental property since 1987.

As to Lot No. 667, the common grantor constructed a residence thereupon and subsequently conveyed title to McSwigan's predecessor in title. McSwigan's predecessor in title subsequently transferred title of Lot No. 667 to Michael McSwigan by deed recorded on December 28, 1993. Michael conveyed Lot No. 667 to himself and his wife, Hope McSwigan, as tenants by the entirety, by a deed dated May 26, 1994. Michael subsequently died on January 29, 2000.

McSwigan's property and G1's property have a common boundary line of some 118 feet. Along this common boundary, there is a small disputed triangular piece of property that at its widest point is five to six feet. Sometime in 2001 or 2002, McSwigan had a survey of her property conducted by James Palma

(Palma Survey).  Multiple surveys by the parties followed.  Other than McSwigan complaining about the location of a G1 tenant's grill in 2016, there was no real disagreement concerning the common boundary line between McSwigan and Gross until 2017.

In 2017, McSwigan engaged the services of a landscaper.  The landscaper was putting mulch out near the disputed area when Gross's wife complained that the mulch was being placed on her property.  The landscaper noticed a visible survey pin and reported same to McSwigan.[1]  McSwigan reported that she disagreed with Mrs. Gross's assessment.  The landscaper advised McSwigan to call police.  Police arrived and advised the landscaper to stop work until the dispute could be resolved.

McSwigan subsequently filed the underlying action against G1 in the Kenton Circuit Court on November 20, 2018.  In her complaint, McSwigan sought to quiet title to the disputed property and asserted claims for intentional trespass, negligent trespass, and ejectment.  G1 filed an answer and counterclaim.  Therein, G1 alleged it had adversely possessed the disputed property.

The matter was heard by the court without a jury pursuant to Kentucky Rules of Civil Procedure (CR) 52.01.  Following the bench trial, Findings of Fact, Conclusions of Law, and Judgment were entered on September

---

[1] The visible survey pin had been set by James Palma when conducting his survey.

21, 2021 (September 21, 2021, Judgment).  Therein, the circuit court ultimately concluded that G1 had obtained "absolute title in fee simple to [the disputed property] by adverse possession."  September 21, 2021, Judgment at 7.  This appeal follows.

We begin our analysis by noting that findings of fact made by a circuit court in a bench trial shall not be set aside unless clearly erroneous.  CR 52.01.[2]  Findings of fact are clearly erroneous if not supported by substantial evidence.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).  Substantial evidence is evidence that "has sufficient probative value to induce conviction in the mind of a reasonable person."  *Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020).  It is within the sole province of the circuit court to observe and assess the credibility of witnesses' testimony.  *Id.*

McSwigan contends the circuit court erred by concluding that G1 had adversely possessed the disputed triangular piece of property along the parties' common boundary line through adverse possession.  More particularly, McSwigan asserts that G1 did not prove any of the five elements of adverse possession by clear and convincing evidence.

---

[2] It is well established that Kentucky Rules of Civil Procedure 52.01 is applicable to litigation involving boundary line disputes.  *Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020) (citing *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky. 1980)).

To sustain a claim under adverse possession, the claimant must prove by clear and convincing evidence that possession of the property has been: (1) hostile and under claim of right, (2) actual, (3) exclusive, (4) continuous, and (5) open and notorious. *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky. 1992).

As to the element of hostile possession under claim of right, claimant is required to demonstrate his intention to control the disputed property so as to provide notice of the adverse claim to the nonpossessory titleholder. *Sweeten v. Sartin*, 256 S.W.2d 524, 526 (Ky. 1953). And, as to the element of actual possession, claimant must demonstrate that "such use and occupation of the claimed property as to establish a clear dominion over it." *Moore v. Stills*, 307 S.W.3d 71, 78 (Ky. 2010). Regarding the exclusive possession element of adverse possession, claimant must demonstrate that he had "exclusive occupancy" of the real property. *Bingham v. Brooks*, 359 S.W.2d 618, 620 (Ky. 1962). As to the continuous element of adverse possession, claimant must demonstrate that he continuously asserted "dominion over the property." *Thompson v. Ratcliff*, 245 S.W.2d 592, 593 (Ky. 1952). A claimant's continuous possession can only be broken by "(1) an act of the real owner; (2) intrusion of a stranger; or (3) abandonment by the occupant." *Id.* at 593. As for the open and notorious element of adverse possession, the claimant must "openly evince a purpose to hold

dominion over the property with such hostility that will give the non-possessory owner notice of the adverse claim." *Phillips v. Akers*, 103 S.W.3d 705, 708 (Ky. App. 2002) (citation omitted). Furthermore, "[m]ere intentions or verbal expressions of a claim to property is not sufficient absent physical acts appearing on the land evidencing a purpose to hold the property hostile to the rights of and giving notice to the title holder." *Id.* at 708 (citations omitted). All five elements of adverse possession must be maintained for the requisite statutory period of fifteen years. *Bishop*, 610 S.W.3d at 350. And, it is claimant's burden to prove the elements of adverse possession by clear and convincing evidence. *Id.* at 350 (citing *Stills*, 307 S.W.3d at 77-78).

In this case, the disputed area of property was located in a residential subdivision. There was evidence presented that G1 and/or Gross had mowed the disputed area since 1987, had performed other routine yard maintenance in the disputed area, and had removed a damaged tree thereupon. Moreover, there was testimony that G1's tenants had engaged in normal leisurely activities upon the disputed area, such as snow sledding and water sliding. Gross also testified that an underground drainage pipe from a sump pump in his basement surfaced in the disputed area and was clearly visible thereupon. Gross stated that the outlet for the drainage pipe had been located on the disputed area of the property since at least 1987. Gross also testified that the eaves of his front porch extended over the

-6-

disputed area of the property since at least 1987. Considering the above facts and evidence as a whole, we believe G1 demonstrated by clear and convincing evidence that its possession of the disputed area was hostile and under claim of right, actual, exclusive, continuous, and open and notorious for the requisite fifteen-year period of time. Therefore, we conclude the circuit court did not commit error by so holding.

McSwigan next contends the circuit court made erroneously findings of fact. McSwigan claims that the court erroneously found that McSwigan hired Brent Webster to conduct a survey of the Lot No. 666. McSwigan points out that G1 actually hired Webster but that Webster's survey "was entirely in agreement with [McSwigan's] position regarding the location of the boundary line." McSwigan's Brief at 13. As a result, McSwigan maintains that the circuit court failed to properly weigh the import of Webster's survey.

The circuit court determined that G1 adversely possessed the disputed property, thereby establishing a new boundary line along and consistent with the adversely possessed property. And, the location of the boundary line as established by Webster was not material to G1's adverse possession claim. Thus, we believe any error to be merely harmless.

McSwigan also asserts the circuit court erroneously found that McSwigan had attached a copy of the Palma Survey of Lot No. 667 to her 2001

variance application with the Park Hills Board of Adjustment. McSwigan maintains that the Palma Survey was conducted in 2002; therefore, it could not have been attached to her 2001 variance application. The alleged import being that Gross could not have relied upon the boundary line as set forth in the Palma Survey prior to 2002.

During trial, Gross testified that when the Palma Survey was conducted, he did not object to the pins Palma placed to mark the lots' common boundary line because Gross agreed therewith. Gross stated that he had maintained the disputed property as marked by the Palma Survey since 1987. Gross asserted that he believed the common boundary line of the lots was where Palma had identified it and had acted accordingly over the years. While the circuit court may have made an erroneous finding of fact regarding whether the Palma Survey was attached to McSwigan's 2001 variance application, we again must conclude that such error was harmless.

McSwigan lastly maintains the circuit court erroneously found that the Palma Survey established the "natural boundary line" between the lots. McSwigan believes that the boundary line as established by the subdivision plat and deeds is the proper boundary line between the lots. McSwigan points out that numerous surveys established that the boundary line as set forth in the Palma Survey is

inconsistent with the actual boundary line as established by the subdivision plat and deeds.

The circuit court found that "[t]he natural boundary line, later marked by the Palma Survey, was observed by the adjoining property owners since 1987." September 21, 2021, Judgment at 6. We acknowledge that the circuit court's use of the term "natural boundary line" may be somewhat puzzling; nonetheless, it is clear that the court regarded the boundary line in the Palma Survey as merely corresponding with the boundary line as established by the conduct of one or both parties since 1987. So, we do not believe the circuit court's above finding of fact was clearly erroneous.

We view any remaining contentions of error as moot or without merit.

In sum, we conclude that the circuit court did not commit reversible error by concluding that G1 adversely possessed the disputed property.

For the foregoing reasons, the Findings of Fact, Conclusions of Law, and Judgment of the Kenton Circuit Court is affirmed.

THOMPSON, L., JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

| BRIEFS AND ORAL ARGUMENT FOR APPELLANT: | BRIEF AND ORAL ARGUMENT FOR APPELLEE: |
|---|---|
| Daniel A. Hunt<br>Covington, Kentucky | Richard H. Deters<br>Independence, Kentucky |