**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000561**
**29-AUG-2024**
**08:21 AM**
**Dkt. 78 SO**

NO. CAAP-20-0000561

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ROBERT G. GOMES, JR., Plaintiff-Appellant,
v.
COUNTY OF HAWAI'I, DEPARTMENT OF PUBLIC WORKS,
HIGHWAYS DIVISION, Defendant-Appellee,
and
DOE PERSONS 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, ROE "NONPROFIT" CORPORATIONS 1-10,
ROE GOVERNMENTAL ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC171000213)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

This appeal concerns whether summary judgment was properly granted on Plaintiff-Appellant Robert G. Gomes, Jr.'s (**Gomes**) disability discrimination claim under Hawaii Revised

Statutes (**HRS**) § 378-2.[1] Because there were genuine issues of material fact regarding whether Gomes was qualified to perform the essential functions of his position with or without reasonable accommodation, we conclude summary judgment was erroneously granted on that basis.

Gomes appeals from the September 8, 2020 "Findings of Fact, Conclusions of Law [(**FOFs/COLs**)], and Decision and Order Granting Defendant County of Hawaiʻi, Department of Public Works, Highways Division's Motion for Summary Judgment Filed Herein on July 10, 2020" (**Order Granting MSJ**) and from the September 8, 2020 "Final Judgment," both filed and entered by the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, Gomes raises two points of error,[3] contending that the Circuit Court erred in (1) granting summary judgment despite the existence of genuine issues of material fact on whether Gomes "was qualified to perform the essential duties of his . . . job with or without reasonable accommodation";[4] and (2) awarding costs against him without a hearing.

---

[1]     HRS § 378-2 (2015) makes it an "unlawful discriminatory practice" for any employer "to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" based on, inter alia, disability.  HRS § 378-2(a)(1)(A).

[2]     The Honorable Peter K. Kubota presided.

[3]     Gomes's points of error have been restated and numbered for clarity.  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) (requiring numbered points of error).

[4]     Gomes summarily challenges numerous FOFs/COLs in the Order Granting MSJ in his points and fails to present specific arguments relating to the FOFs and COLs.  See HRAP Rule 28(b)(7) (requiring argument on points of error and stating "[p]oints not argued may be deemed waived"); Lambert v. Waha, 137 Hawaiʻi 423, 436 n.14, 375 P.3d 202, 215 n.14 (2016) (concluding issue waived where "no discernable argument supporting this specific challenge is raised").  We do not address these challenges.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Gomes's points of error as follows, and vacate and remand.

On July 3, 2017, Gomes filed a Complaint of disability discrimination against Defendant-Appellee County of Hawaiʻi, Department of Public Works, Highways Division (**County**), alleging that:  despite a pre-existing disability (diabetes), he had capably performed the essential functions of his position as Street Cleaning Supervisor (**Supervisor**) for over eight years; his diabetes never interfered with his duties; and the County retaliated against him--for his criminal complaint against a co-worker--by amending his position's job specifications such that he would no longer be qualified due to his disability.

The record of the summary judgment hearing reflects that Gomes was an insulin-dependent diabetic since at least 1995.  Under state and federal law, a medical examiner's certificate (**MEC**) is required to operate equipment and vehicles with a gross vehicle weight rating (**GVWR**) of over 10,000 pounds, but insulin-dependent diabetics are prohibited from obtaining an MEC.[5]  Because of Gomes's diabetes, he never obtained an MEC.

Gomes was initially hired by the County as a temporary Laborer II in 1998, and had disclosed to the County that he was an insulin-dependent diabetic prior to his hiring.  On May 1, 2008, the County promoted Gomes to Supervisor.  According to the

---

[5]     49 Code of Federal Regulations (**C.F.R.**) § 391.41 (2015), adopted and incorporated in Hawaiʻi Administrative Rules (**HAR**) § 19-141-4, prohibits the operation of a "commercial motor vehicle" without an MEC, and precludes a person with a "medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control" from being "physically qualified to drive a commercial motor vehicle."  A "commercial motor vehicle" has "a [GVWR] of 4,536 kg (10,001 pounds) or more[.]"  49 C.F.R. § 390.5 (2017).

County's January 3, 2008 Supervisor specifications document (**2008 Specifications**), the Supervisor position was "distinguished by its responsibility to supervise and participate in the work activities of the street cleaning crew, which includes the street sweeper operators, equipment operators, and laborers"; and the position's minimum qualification requirements included at least one year of experience operating a "motorized equipment comparable to that of the class."

After his promotion to Supervisor in 2008, Gomes mainly used a 1999 pick-up truck with a GVWR less than or equal to 10,000 pounds, although on at least ten occasions during 2014 to 2015, Gomes used a heavier pick-up truck (over 10,000 pounds) when his usual truck was under repair. Since 2006, the County's street cleaning crews used a Model 151 Tennant Sentinel Street Sweeper (**Street Sweeper**) with a GVWR of 20,000 pounds. Gomes generally did not use the Street Sweeper, but admitted to operating it "on more than one occasion."

On June 4, 2015, Gomes accidentally damaged a co-worker's van while moving the Street Sweeper[6] in the County's baseyard. One week later, Gomes had an altercation with the co-worker regarding the co-worker's demand for repair costs. On June 23, 2015, Gomes took an extended leave of absence, claiming stress related to the incident.

---

[6] Although Gomes admitted that he "operated" the Street Sweeper "on a public road on more than one occasion" prior to June 4, 2015, he also attested that he "never had to operate the Street Sweeper" as Supervisor. Gomes argues this apparent inconsistency can be explained by the different meanings of the word "operate," i.e., Gomes used the commonly-used dictionary meaning of "operate" in his admission, but in his declaration used the word "operate" as "a term of art" that implies the "completion of a specific protocol." We reject this distinction infra in footnote 10.

In January 2016, while Gomes was out on leave, the County replaced the 1999 pick-up truck Gomes mainly used, with a new Ford F350 Crew Cab (GVWR over 10,000 pounds) for safety reasons.

On March 10, 2016, while Gomes was out on leave, the County revised its specifications document (**2016 Specifications**) to explicitly state that the Supervisor position required a current MEC (previous versions did not contain such a statement).

On March 14, 2016, the County notified Gomes that because he was "not able to perform the essential functions of the Street Cleaning Supervisor job[,]" he was "being referred to the County's Job Search Program."

In April 2016, the County offered Gomes a Custodian/Groundskeeper I position with the same salary and benefits that he previously received as Supervisor.

On September 7, 2016, Gomes returned to work at the new position, but after one month, he took another stress-related leave of absence. He subsequently never returned to work at the County, and filed his Complaint in 2017.

On July 10, 2020, the County filed a Motion for Summary Judgment (**MSJ**) on the Complaint, arguing that there were no genuine issues of material fact, and that under Suzuki v. State, 119 Hawaiʻi 288, 297-98, 196 P.3d 290, 299-300 (App. 2008),[7] Gomes could not show that he was able to perform the

---

[7] Suzuki sets forth the essential elements of a prima facie case of disability discrimination under HRS § 378-2 as follows: (1) the plaintiff "is an individual with a 'disability' within the meaning of the statute" (**Element 1**); (2) the plaintiff "is qualified, with or without reasonable accommodation, to perform the essential duties of [his or] her job" (**Element 2**); and (3) the plaintiff "suffered an adverse employment decision because of [his or] her disability" (**Element 3**). 119 Hawaiʻi at 297, 196 P.3d at 299 (citing French v. Haw. Pizza Hut, Inc., 105 Hawaiʻi 462, 467, 99 P.3d 1046, 1051 (2004); Dargis v. Sheahan, 526 F.3d 981, 986 (7th Cir. 2008)).

essential duties of the Supervisor position (Element 2), or that he had suffered an adverse employment decision due to his diabetes (Element 3)--both of which were essential elements of a prima facie disability discrimination claim.

The September 8, 2020 Order Granting MSJ concluded that Gomes failed to establish Suzuki Element 2, "that he was qualified, with or without a reasonable accommodation, to perform the essential functions of his job[,]" which was "fatal" to Gomes's discrimination claim; and did not reach the County's remaining arguments.  See COLs 10, 11, 19-22.

**(1)**  Gomes argues that the Circuit Court erred in granting summary judgment despite the existence of genuine issues of material fact as to Suzuki Element 2, regarding whether operation of the Street Sweeper was an essential function of his Supervisor duties, and whether Gomes was qualified to perform the essential functions of his job with reasonable accommodation.

We review an award of summary judgment de novo under the same standard applied by the circuit court.  Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 12, 346 P.3d 70, 81 (2015) (citing Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party.

Id. (cleaned up).

6

The HAR § 12-46-182 (2012) definition of "qualified" contains two prongs, as follows:

> "Qualified" with respect to a person with a disability means a person with a disability who satisfies:
>
> (1) The requisite skill, experience, education, and other job-related qualification standards of the employment position such person holds or desires;[8] and
> (2) Who, with or without reasonable accommodation, can perform the essential functions of such position.

(Footnote added); see Suzuki, 119 Hawaiʻi at 300, 196 P.3d at 302 (quoting two-pronged definition of "qualified" under HAR § 12-46-182). Suzuki Element 2, that a plaintiff be qualified "to perform the essential duties" of the position, is the second prong referring to "essential functions" set forth above.

HAR § 12-46-182 (2012) defines "[e]ssential functions" as "[t]he fundamental job duties of the employment position the person with a disability holds or desires[,]" and provides guidelines for the analysis of whether a job function is "essential," as follows:

> (1) . . . The term "essential functions" does not include the marginal functions of the position.
>
> (2) In determining whether a job function is essential, the focus should be on the purpose and importance of the function as it relates to the result to be accomplished, rather than on the manner in which the function is presently performed. . . .
>
> (3) A job function may be considered essential for any of several reasons, including, but not limited to, the following:
>
> > (A) The function may be essential because the reason the position exists is to perform that function;
> >
> > (B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; or

---

[8] On appeal, the parties do not address the first prong of the "qualified" definition, and only argue the second prong.

     (C)   The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

  (4)  <u>Evidence of whether a particular function is essential should reflect the actual functioning and circumstances of the particular job</u>. Factors to be considered include, but are not limited to:

     (A)   The employer's judgment as to which functions are essential;

     (B)   <u>Written job descriptions</u> prepared before advertising or interviewing applicants for the job;

     (C)   The amount of time spent on the job performing the function;

     (D)   <u>The consequences of not requiring the incumbent to perform the function</u>;

     . . .

     (F)   <u>The work experience of past incumbents in the job</u>; or

     . . . .

(Emphases added.)

The Circuit Court concluded that "[t]he operation of commercial vehicles and equipment over 10,000 pounds GVWR [was] an essential function of the [Supervisor] position." COL 17. The Circuit Court reasoned that the Supervisor's duties at the time of Gomes's 2008 promotion required the Supervisor to "supervise and participate in the activities of the street cleaning crew, including the operation of various mechanical street sweepers and comparable motorized equipment" (FOF 15); that street cleaning duties included "the operation of street sweeping equipment," which "comprised 60% of the . . . Supervisor's duties" (FOF 16); and that the County "subsequently learned that the street sweeper that [Gomes] was operating,

(Tenant 151E) actually ha[d] a GVWR of 20,000 pounds and therefore required an MEC for operation" (FOF 20).

Gomes contends the operation of commercial vehicles and equipment was not an essential function of the Supervisor position under the HAR § 12-46-182 "essential functions" framework, arguing that: (1) the operation of such vehicles was a "marginal" function of the position, because as Supervisor, he never had to operate the Street Sweeper and instead used a pick-up truck with GVWR less than or equal to 10,000 pounds; (2) the primary "result to be accomplished" of the Supervisor's position was to supervise the street cleaning crew, and the crew completed cleaning of sidewalks, curbs, gutters, and streets, and picking up of trash from rubbish receptacles, all without the Street Sweeper; (3) commercial vehicle operation was not a "reason the Supervisor[] position existed[,]" according to retired County of Hawaiʻi, Department of Public Works, Highways Division Chief Stanley Nakasone (**Nakasone**), who testified that the regular operation of a Street Sweeper was not a "function" of the Supervisor position; and (4) the 2008 Specifications and Position Description did not explicitly state that an MEC was required, or that commercial vehicle operation was a necessary duty of the position.[9]

The County responds that the operation of commercial vehicles and equipment <u>was</u> an essential function of the position, where (1) the 2008 Supervisor Position Description allocated 60% of time spent on the job to "[s]treet [c]leaning

---

[9] Although "[operation of] various mechanical streetsweepers and other comparable motorized equipment" over 10,000 GVWR is enumerated in the 2008 Specifications list of duties, the list is prefaced by this qualifying text: "The following are examples of duties and are not necessarily descriptive of any one position in this class."

[d]uties," which included "[s]upervis[ing] and participat[ing] in the cleaning of sidewalks, curbs, gutters, and streets," and specifically enumerated "[operation of] various mechanical streetsweepers and other comparable motorized equipment" over 10,000 GVWR as an example of the Supervisor's duties; (2) Gomes's admissions[10] that he had operated commercial vehicles including the Street Sweeper on numerous occasions while Supervisor; and (3) Nakasone's testimony that the Supervisor position was created in part to serve as a back-up for the subordinates (including the Street Sweeper operator) in case they became sick or otherwise unavailable.[11]

We conclude that the evidence here, viewed in the light most favorable to Gomes, failed to establish that there was no genuine issue that commercial vehicle operation was an essential function of the Supervisor position under HAR § 12-46-182, where:  the 2008 Specifications did not explicitly require an MEC or state that commercial vehicle operation was a necessary duty, see subsection (4)(B); Nakasone testified that commercial vehicle  operation was not a "reason the Supervisor[] position existed[,]" see subsection (3)(A), and that the regular operation of the Street Sweeper was not a "function" of the Supervisor position; Gomes's testimony that he never had to

---

[10]    Gomes's claimed distinction between "operating" and "driving" a street sweeper, implying that only "operating" a street sweeper requires an MEC (and Gomes never "operated" the street sweeper, but only "drove" it), lacks merit, where federal transportation regulations use the terms interchangeably. See 49 C.F.R. § 390.5 (2016) ("Operator—See driver"; "Driver means any person who operates any commercial motor vehicle").

[11]    In his deposition, Nakasone testified that operating the street sweeper machine was not one of the functions of the street cleaning supervisor, but also testified that "[w]hen we made [the Supervisor] position, the [Supervisor] should be able to at least know how to operate [the street sweeper] . . . because the guy gets sick, he needs to go home; he doesn't come work the day [sic]; the equipment broke on the street [sic], somebody has to drive it in.  So he has to be able to do that."

operate the Street Sweeper and instead used a pickup truck under the weight limit, indicating that commercial vehicle operation was a "marginal" function under subsection (1) and (4)(F); and Gomes's testimony that the primary "result to be accomplished" under subsection (2) was supervising the crew, cleaning the subject areas, and retrieving trash from receptacles--all of which did not require commercial vehicle operation.  See HAR § 12-46-182.  Thus, the record reflects a genuine issue of material fact as to Suzuki Element 2 regarding whether Gomes was qualified to perform the essential duties of the Supervisor position, precluding summary judgment on that basis.

Summary judgment was also precluded due to a genuine issue of material fact as to Suzuki Element 2's additional "with or without reasonable accommodation"[12] requirement.  Here, as of 2016 (when Gomes was reassigned to a Custodian/Groundskeeper I position), the County's fleet of vehicles was apparently comprised of only those greater than 10,000 pounds GVWR, making it impossible, according to the County, for Gomes to resume his duties as Supervisor without a reasonable accommodation.  As the County correctly points out, waiving the MEC requirement is not a reasonable accommodation, because doing so would contravene existing federal and state law.  Under HAR § 12-46-182, however, reasonable accommodations may include the "acquisition or modifications of equipment or devices[,]" and Gomes argues that

---

[12]    HAR § 12-46-182 (2012) defines "reasonable accommodation" generally under subsection (1)(B) as:  "Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a person with a disability to perform the essential functions of that position[.]"  "Reasonable accommodations may include, but is not limited to: . . . [j]ob restructuring; . . . acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; . . . and other similar accommodations for persons with disabilities."  HAR § 12-46-182(2)(B).

the record did not show that the County "[took] into consideration whether [Gomes] could use a different, smaller truck[,] as it [had] previously allowed and documented." "[R]easonableness can only constitute a question of law suitable for summary judgment when the facts are undisputed and not fairly susceptible of divergent inferences, because, where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury." Adams v. Haw. Med. Serv. Ass'n, 145 Hawai'i 250, 256, 450 P.3d 780, 786 (2019) (citation omitted). Gomes also argues that the County did not engage in any "interactive process" required under HAR § 12-46-187.[13] The Order Granting MSJ concluded that "waiver of the MEC requirement is not a reasonable accommodation" (COL 12), and did not further address the "with or without reasonable accommodation" requirement. Viewed in the light most favorable to Gomes, the evidence failed to establish as a matter of law and undisputed material fact that Gomes could not have performed the essential functions of his position with reasonable accommodation.

For these reasons, we conclude the record reflects genuine issues of material fact regarding Element 2 of Gomes's disability discrimination claim, as to whether Gomes was "qualified . . ., with or without reasonable accommodation, [to] perform the essential functions" of the Supervisor position under the second prong of the HAR § 12-46-182 definition of "qualified."[14] The Circuit Court erred in granting summary

---

[13]    "To determine the appropriate reasonable accommodation," HAR § 12-46-187(b) requires an employer "to initiate an interactive process, . . . with the person with a disability in need of the accommodation."

[14]    Our holding is limited to reviewing the grant of summary judgment on the second prong of the "qualified" definition, which is what the parties argued on appeal. We express no opinion as to the first prong of the "qualified" definition under HAR § 12-46-182 (whether Gomes possessed the

judgment on Gomes's Complaint on this basis. See Suzuki, 119 Hawaiʻi at 297, 196 P.3d at 299; Adams, 135 Hawaiʻi at 12, 346 P.3d at 81.

**(2)** In light of our conclusion vacating the grant of summary judgment to the County, we also vacate the award of the County's costs.

For the foregoing reasons, we vacate the "Findings of Fact, Conclusions of Law, and Decision and Order Granting Defendant County of Hawaiʻi, Department of Public Works, Highways Division's Motion for Summary Judgment Filed Herein on July 10, 2020" and the "Final Judgment," both filed and entered on September 8, 2020 by the Circuit Court of the Third Circuit. We remand for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, August 29, 2024.

On the briefs:

Ted H.S. Hong
for Plaintiff-Appellant.

Dakota K. Frenz
Deputy Corporation Counsel
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

requisite experience and other job-related qualifications of the position), which was not addressed in the parties' briefing.